936 P.2d 690

**In the Interest of BABY DOE, a child under eighteen years of age.**

**STATE of Idaho, DEPARTMENT of HEALTH & WELFARE, and Jane Doe I, Guardian Ad Litem, Petitioners–Respondents,**

v.

**John DOE, Respondent–Appellant.**

No. 22976.

Court of Appeals of Idaho.

March 28, 1997.

Petition for Review Denied, May 14, 1997.

**48**

Ellsworth, Kallas, P.L.L.C., Boise, for respondent–appellant.

Alan G. Lance, Attorney General; Mary Jo Beig, Deputy Attorney General, Boise, for petitioner–respondent Department of Health & Welfare.

Eberle, Berlin, Kading, Turnbow & McKlveen, Chtd., Boise, for petitioner–respondent Guardian Ad Litem.

WALTERS, Chief Judge.

Upon a petition filed by the Idaho Department of Health and Welfare pursuant to Chapter 20, Title 16, Idaho Code, the parent-child relationship was terminated between the appellant in this case and his minor son. A magistrate entered the order terminating the relationship after an evidentiary hearing, and the magistrate's order was upheld by the district court on an intermediate appeal. As the appellant, the father presents two issues for consideration. First, he contends that he was deprived of substantial procedural due process protection when the magistrate denied his request that he be transported at state expense from a federal penitentiary in Texas, where he is incarcerated, to the termination hearing in Boise so he could be present and testify in person at the hearing. The second issue is whether the magistrate's termination order was supported by clear and convincing evidence. We hold that no error occurred and we affirm the order.

## BACKGROUND

The child was born October 1, 1990. In February, 1991, the mother and father of the child, who were homeless, signed a stipulation in Boise placing the child in the legal custody of the Idaho Department of Health and Welfare, with the agreement that the parents would attend and successfully complete a parenting program. Subsequently, neither parent completed the program but instead, in August 1991, notified the Department that they had decided to move to California. On August 21, 1991, the parents were arrested in Mexico on two homicide charges. The charges against the mother were dismissed after further investigation and she returned to the Boise area in October 1991. The father was convicted of the two homicides and was sentenced in May, 1992, to serve 21 years in prison. Pursuant to a treaty with the Government of Mexico, the father's custody was transferred to the United States Department of Justice, and he is incarcerated in a federal penitentiary in

Texas under the control and supervision of the Bureau of Prisons. His sentences will expire in the year 2013; however, he can be released from confinement either in the year 2003 or 2005, depending upon the allowance of good time credit against his sentences.

In January, 1993, the Department filed a petition with the magistrate division of the district court to terminate the parent-child relationship between the mother, the father and the child. The petition alleged that the child had been neglected and deprived of parental care necessary for his health, morals and well-being due to the lack of parenting skills and because of the unstable lifestyles of his parents. A magistrate appointed a guardian ad litem for the child. Another guardian ad litem and also an attorney were appointed for the mother, and the matter proceeded first with regard to the termination of the relationship between the mother and the child. After an evidentiary hearing in July, 1994, the magistrate entered a decree on October 5, 1994, terminating the parent-child relationship between the mother and the child.

A status conference was held by the magistrate on October 11, 1994, concerning the petition to terminate the father's relationship. This conference was attended by the attorney for the Department and by the child's guardian ad litem. It was determined at this conference that counsel should be appointed to represent the father, and that the petition should be scheduled for hearing on the question of the termination of the relationship between the father and the child. On October 26, the magistrate entered an order appointing an attorney for the father. The proceeding then came on for a hearing on December 12. At this hearing, the Department's attorney advised the magistrate that the Department was not ready to proceed because the father was not present and that all possibilities to have the father present had not been exhausted. The magistrate rescheduled the termination hearing for January 23, 1995.

On January 17, the attorney for the father filed a motion for a writ of habeas corpus *ad testificandum* requiring the state to transport the father to Boise for the termination hearing. As an alternative, he asked for a continuance of the termination hearing in order to afford the father the opportunity to testify by way of telephone deposition.

At the scheduled hearing on January 23, the parties addressed as a preliminary matter the question raised by the father's motion for a writ of habeas corpus. His counsel argued that the importance of the action required the personal presence of the father and that the state should bear the expense of arranging for the father's attendance inasmuch as he was in custody. The parties represented that they had been unsuccessful in obtaining a federal warrant from the United States Attorney's office to transport the father at the expense of the federal government, due to the fact that the litigation did not involve a matter of federal interest.

The Department presented a letter from the local sheriff's office respectfully declining to transport the father from Texas to Idaho "due to the fact that this transportation would involve a non-criminal case, the high cost of transporting this individual (estimated at $7000) and the obvious security problems that could arise in the transporting of an inmate that is sentenced for two homicides that were committed in the country of Mexico." Further, the Department pointed out that under the code of federal regulations the ultimate decision of whether to release the father, who was an inmate with a criminal history of dangerousness demonstrated by two homicides, rested with the warden of the federal institution where the father was incarcerated, not with a state court.[1] The attorney for the Department suggested that the magistrate allow the father to testify by

---

1. A copy of the regulations was submitted to the magistrate for her consideration. Among the statement of procedures in Part 3 (§ 527.31, C.F.R.), is the following:

   g. Transfers in civil cases pursuant to a writ of habeas corpus as [sic] testificandum must be cleared through both the Regional Counsel and

the Warden. Transfer ordinarily shall be recommended only if the case is substantial, where testimony cannot be obtained through alternative means such as depositions or interrogatories, and where security arrangements permit.... There is no presumption that an inmate must be released in state civil cases.

telephone or by deposition as an alternative to issuance of a writ for personal attendance.

After considering the respective positions of the parties, the magistrate denied the motion for a writ of habeas corpus. The magistrate gave a detailed explanation, engaging in a balancing of the competing interests involved. The magistrate alluded to the presence of able counsel appointed to represent the father; the unlikelihood of release of the inmate by the warden of the federal penitentiary; and whether the court could obligate the funds of the state to secure the attendance of a person incarcerated in another jurisdiction. The magistrate also expressed an unwillingness to delay determination of the matter until the father was released after serving his sentences, due to the needs and interest of the child to receive the care necessary "to go on with his life." The magistrate decided to proceed with the evidentiary hearing but to permit the father to present his testimony through a deposition conducted by telephone. The magistrate also decided to allow the father's attorney to call additional witnesses at a later time depending on information developed during the deposition.

Following the evidentiary hearing and the submission of the father's subsequent testimony by deposition, the magistrate entered findings of fact, conclusions of law and a decree terminating the parent-child relationship between the father and the child. As grounds for the decree, the magistrate found that the child had been neglected by the father and did not receive the parental care necessary for his health, morals, and well-being due to the lack of parenting skills and unstable life-style of the father. The father appealed to the district court pursuant to I.C. § 16-2014. The district court affirmed the decree. The father then brought this appeal.

### STANDARD OF REVIEW

Our standard of review in parent-child termination cases is well settled. We will give due regard to the appellate decision of the district court, but we will review the trial record independently from the district court's decision. *Doe v. State, Dept. of Health and Welfare,* 123 Idaho 502, 849 P.2d

963 (Ct.App.1993). We will conduct free review of questions of law decided by the magistrate, upon which error is assigned on appeal, and we will determine whether the magistrate's findings of fact are supported by substantial, competent evidence, where the appellant asserts otherwise. *In the Matter of Aragon,* 120 Idaho 606, 818 P.2d 310 (1991).

### PROCEDURAL DUE PROCESS

█ The first issue raised by the father concerns a question of law relating to due process. However, it also involves a review of the exercise of discretion by the magistrate in denying the father's motion for a writ of habeas corpus and in reaching the decision that due process would be satisfied through the use of deposition testimony as an alternative means. Because the issue ultimately is whether the magistrate deprived the father of substantial due process protection, it is a question of law over which we conduct free review. The question of due process presented in the circumstances of the instant case is one of first impression with the Idaho appellate courts.

█ It is axiomatic that preservation of the family unit is a right protected by the due process clause of the Fourteenth Amendment to the United States Constitution, and that a parent has a fundamental liberty interest in maintaining a familial relationship with his or her child. *Quilloin v. Walcott,* 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978); *In the Interest of Bush,* 113 Idaho 873, 749 P.2d 492 (1988). Intervention by the State to terminate the relationship between a parent and a child must be accomplished by procedures meeting the requisites of due process. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Lassiter v. Department of Social Services,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).

█ Due process is a flexible constitutional principle and calls for such procedural protection as the particular situation demands. *Smith v. Org. of Foster Families for Equality & Reform,* 431 U.S. 816, 848, 97

S.Ct. 2094, 2111–12, 53 L.Ed.2d 14 (1977); *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *Cafeteria & Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748–49, 6 L.Ed.2d 1230 (1961).

> The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation. . . . [W]hat procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as the private interest that has been affected by government action.

*Cafeteria & Restaurant Workers*, at 895, 81 S.Ct. at 1748–49. In determining whether the procedure followed in a parental rights termination proceeding satisfied the constitutional requirements of due process, the United States Supreme Court has applied the criteria set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *See Santosky v. Kramer, supra*, (*Mathews* criteria used to determine whether burden of proof satisfied due process); *Lassiter v. Dep't of Soc. Serv., supra*, (*Mathews* used to determine if indigent parent was entitled to appointed counsel in order to satisfy due process). The *Mathews* criteria was explained by the Court as follows:

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335, 96 S.Ct. at 903. The record in the instant case discloses that the *Mathews* principles were presented and argued to the magistrate as guidance toward arriving at a decision on the due process question.

The Idaho Supreme Court has recognized that the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner, *Sweitzer v. Dean*, 118 Idaho 568, 573, 798 P.2d 27, 32 (1990), or in a meaningful forum after timely notice. *Matter of Adoption of Chaney*, 126 Idaho 554, 887 P.2d 1061 (1995). In a related vein, the United States Supreme Court has held that a party is entitled to a meaningful and fair opportunity to defend in a family status suit, which entitlement cannot be impaired as a result of indigence. *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). Furthermore, it has been held that procedural due process requires that an incarcerated father be given notice of the termination proceeding and an opportunity to be heard or to defend in the action. *Matter of Appeal in Pima County Juvenile Action No. S–949*, 131 Ariz. 100, 638 P.2d 1346 (App.1981).

Numerous other jurisdictions recognize that the appointment of counsel for an indigent out-of-state prisoner assures effective access to the courts, and the opportunity to present the prisoner's testimony by way of deposition affords the prisoner the ability to meet issues raised in a termination proceeding so that he is not denied due process when rendered unable to appear and testify in person. *E.g., In re Gary U.*, 136 Cal.App.3d 494, 186 Cal.Rptr. 316 (1982); *In re Juvenile Appeal*, 187 Conn. 431, 446 A.2d 808 (1982); *In re Randy Scott B.*, 511 A.2d 450 (Me. 1986); *In the Matter of the Welfare of HGB*, 306 N.W.2d 821 (Minn.1981); *Matter of Rich*, 604 P.2d 1248 (Okla.1979); *Matter of Raymond Dean L.*, 109 A.D.2d 87, 490 N.Y.S.2d 75 (1985); *In the Interest of F.H.*, 283 N.W.2d 202 (N.D.1979); *Najar v. Oman*, 624 S.W.2d 385 (Tex.Ct.App.1981); *In the Interest of Darrow*, 32 Wash.App. 803, 649 P.2d 858 (1982); *In the Matter of Clark*, 26 Wash. App. 832, 611 P.2d 1343 (1980). Similarly, the Supreme Court of Oregon in *State ex rel. Gladden v. Sloper*, 209 Or. 346, 306 P.2d 418 (1957), held that the failure to deliver an inmate to the courtroom so he could attend a divorce proceeding did not deprive him of his due process rights because his ability to give testimony by deposition and to be represented by counsel were unimpaired. *See also,*

*Bagley v. Bagley,* 57 Misc.2d 388, 292 N.Y.S.2d 796 (1968); *Green v. Boney,* 233 S.C. 49, 103 S.E.2d 732 (1958). On the other hand, without acknowledging the alternative means of providing testimony by deposition as a possibility, the Kansas Supreme Court has held that an in-state prisoner must be afforded the opportunity to be personally present at a termination hearing even though he is represented by an attorney in the proceeding. *In the Matter of S.M.,* 12 Kan. App.2d 255, 738 P.2d 883 (1987).

Upon review of these cases, we are persuaded to follow what appears to be the majority rule, expressed by the courts other than in the State of Kansas. In this regard, the North Dakota Supreme Court, in *In the Interest of F.H., supra,* stated:

> From our review of cases from the various jurisdictions and the principles of law involved, we are compelled to conclude that a convict does not have a constitutional right to personally appear in a civil suit where he has been permitted to appear through counsel and by deposition, if appropriate. Any right to appear personally would have to rest upon convincing reasons and would ultimately be left to the sound discretion of the trial court.

283 N.W.2d at 209. The North Dakota court suggested that a trial court should consider the following factors in making its determination:

> [T]he trial court may take into account the costs and inconvenience of transporting a prisoner from his place of incarceration to the courtroom, any potential danger or security risk which the presence of a particular inmate would pose to the court, the substantiality of the matter at issue, the need for an early determination of the matter, the possibility of delaying trial until the prisoner is released, the probability of success on the merits, the integrity of the correctional system, and the interests of the inmate in presenting his testimony in person rather than by deposition.

*Id.*

Here the facts show that the magistrate took appropriate steps to protect the father's rights initially by appointing competent counsel to represent him pursuant to I.C. § 16-

2009. *See In the Interest of M.T.P.,* 101 Idaho 280, 611 P.2d 1065 (1980). Later, the magistrate applied the principles enunciated in *Mathews v. Eldridge, supra,* by considering the extent of the private and public interests affected, the risks and burdens involved, and the value of substitute safeguards in deciding whether to arrange to have the father present or whether to allow the father's testimony by way of a deposition. In reaching its decision, the magistrate was confronted with the security risk that the father presented, the need for an early determination of the child's situation, the great uncertainty that the federal warden would allow the father to be removed from his prison, and the expense involved for transporting and guarding the father during the proceeding even if the warden would agree to his release. Indeed, the fact that the father's testimony ultimately was available by deposition has obviated the predicate for release from the federal prison in Texas, *see note 1, supra,* and supports the lack of error in the magistrate's decision not to issue the writ of habeas corpus.

After thoroughly reviewing the record, we conclude that the magistrate acted well within her discretion and within the bounds of due process when she denied the father's request to be present and went forward with the termination hearing while affording the father the opportunity to give his testimony by deposition. We hold that the magistrate did not deprive the father of procedural due process. We further hold that, based upon the circumstances presented to the magistrate, the magistrate properly exercised her discretion in deciding not to grant the motion for a writ of habeas corpus, but instead to afford the father the alternative means of presenting his testimony by deposition.

## CLEAR AND CONVINCING EVIDENCE

The other issue raised on this appeal is whether the magistrate's decision to terminate the parent-child relationship between the father and the child was supported by clear and convincing evidence. In particular, the father argues that evidence of neglect and abandonment was lacking, and that ter-

mination of his rights on the basis of his incarceration alone is not justified.

■ It is well settled that, in a proceeding to terminate a parent-child relationship, the due process clause mandates that the grounds for termination must be shown by clear and convincing evidence. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Matter of Aragon,* 120 Idaho 606, 608, 818 P.2d 310, 312 (1991). *See also,* I.C. § 16–2009. When the trial court finds that the grounds as defined by statute, which are alleged for termination, are established by clear and convincing evidence, those findings will not be overturned on appeal unless they are clearly erroneous. *In Interest of Crum,* 111 Idaho 407, 725 P.2d 112 (1986). Clear error, in turn, will not be deemed to exist where the findings are supported by substantial and competent, albeit conflicting, evidence. *Id.* "It is for the trial court to determine whether clear and convincing evidence supported the termination of parental rights. Our task on this appeal is to determine whether the trial court's finding ... is clearly erroneous." *Id.* at 409, 725 P.2d at 114. Furthermore, "in reviewing such findings, this Court will indulge all reasonable inferences in support of the trial court's judgment" when reviewing an order that parental rights be terminated. *Aragon,* at 608, 818 P.2d at 312.

■ Contrary to the father's argument, the magistrate did not find as a matter of fact that the father had abandoned the child, nor did the magistrate determine that termination of the parent-child relationship was justified on the basis of the father's incarceration. The magistrate's finding as to the grounds for termination is:

> That the termination of the parent-child relationship between [the father] and [the child] is justified on the grounds that the child has been neglected by his parent, [the father]; the child lacks the parental care necessary for his health, morals and well-being due to the lack of parenting skills and unstable life-style of his father.

This finding reflects the statutory ground recited in I.C. § 16–2005(b) for termination of the parent-child relationship: "The parent has neglected ... the child. Neglect as used herein shall mean a situation in which the child lacks parental care necessary for his health, morals and well-being."

We have previously held that the issue of whether parental neglect has occurred is a question of fact to be determined by the trial judge through application of the constitutionally mandated standard of clear and convincing evidence. *In the Interest of Cheatwood,* 108 Idaho 218, 697 P.2d 1232 (Ct.App.1985). Here, substantial evidence was presented to support the claim of neglect alleged in the petition as the ground for termination of the parent-child relationship. The Department submitted testimony and documentary evidence showing that the father (and mother) only had custody of the child for the first four and one-half months of the child's life. During that time the child was placed in twenty-four hour alternative care facilities on four separate occasions, reducing the actual care of the child by the father to period of approximately only 84 days. Before the child was turned over to the Department in February, 1991, the parents and the child were homeless and had lived in three different states. The child was left by the father in New Meadows, Idaho, for six days in the care of a woman he had never met. The parents laced the child's nursing bottle with alcohol. The parents failed to follow a feeding schedule recommended by a nurse. The child suffered a human bite while in the father's custody. Although the father testified that he cared for the child, changed his diapers and fed him, other witnesses observed that the father exhibited little attachment to the child; the child frequently smelled, was not clean, and looked unhealthy. His eyes were mattery and he regularly had diaper rash. The child suffered significant developmental delays in motor skills, communication and its social development while in his parent's care.

The father was unable or unwilling to complete the parenting program arranged for him by the Department, except for submitting to a psychological evaluation. That evaluation reported that the father was impulsive, self-centered, arrogant and unwilling to take responsibility for his own actions. The evaluator reported that the father's restrict-

ed problem-solving capabilities and poor judgment impaired his ability to place the child's needs above his own.

In sum, the father exhibited an inability to provide for the child's welfare by failing to maintain a stable lifestyle, with steady employment and a home. Approximately six months after voluntarily placing the child in the custody of the Idaho Department of Health and Welfare, the father moved to California, leaving the child in Idaho. The physical, emotional and educational needs of the child were disregarded. The father's failure to undertake and discharge the obligations to the child reasonably expected of a parent justified the magistrate's determination that, based upon evidence of neglect and a lack of parental care necessary for the health, morals, and well-being of the child, termination of the parent-child relationship was in the best interest of the child.

## CONCLUSION

Upon review of the record, we conclude that the magistrate did not deny procedural due process to the appellant. We also hold that the magistrate's finding of neglect as a basis for terminating the parent-child relationship is supported by substantial, competent evidence.

Accordingly, the decree terminating the parent-child relationship between the father and the child is affirmed. No costs or attorney fees on appeal are awarded.

LANSING and PERRY, JJ., concur.