**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 43450**

| | | |
|---|---|---|
| IN THE MATTER OF: DOE CHILDREN, Children Under Eighteen (18) Years of Age. | ) ) ) | |
| IDAHO DEPARTMENT OF HEALTH AND WELFARE, | ) ) | 2015 Opinion No. 88 |
| | ) | Filed: December 30, 2015 |
| Petitioner-Respondent, | ) ) | Stephen W. Kenyon, Clerk |
| v. | ) ) | |
| JOHN DOE (2015-10), | ) ) | |
| Respondent-Appellant. | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Sixth Judicial District, State of Idaho, Caribou County. Hon. David R. Kress, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Stephen G. Larsen, Pocatello, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Thomas D. Smith, Deputy Attorney General, Boise, for respondent.

---

GUTIERREZ, Judge

John Doe appeals from the magistrate's judgment terminating his parental rights to A.J.W. and A.R.W. Specifically, Doe contends the magistrate erred in terminating his parental rights. Moreover, Doe contends the Department failed to fulfill its statutory responsibility to reunify Doe with his children. Doe finally argues the magistrate violated his due process rights under the Fourteenth Amendment because he lacked counsel during several hearings in the Child Protection Act proceeding. Doe requests that this Court reverse the magistrate's judgment. For the reasons explained below, we affirm.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe married E.M.W. in 2000. They had two children together who are the subject of this case--A.J.W. was born in 2006, and A.R.W. was born in 2009. E.M.W. had B.L.W. in 1999, and Doe adopted B.L.W. in 2000. E.M.W. has three adult children from other relationships--B.G., H.G., and S.G. Doe has two adult daughters from a previous marriage--A.W. and K.W.

A child protection worker from the Department of Health and Welfare (the Department) first contacted Doe's family in 2004 after E.M.W. hit B.L.W. with a spoon. A year later, E.M.W. admitted giving H.G. medication that was not prescribed for H.G.

K.W. testified that E.M.W. inappropriately touched her breasts and her vagina in 2005. E.M.W. also attempted to kiss K.W. Following the incidents, E.M.W. was charged but was acquitted. K.W. further testified that Doe was aware that E.M.W. displayed inappropriate behavior toward K.W. regarding K.W.'s body.

In 2007, E.M.W. again hit B.L.W. and caused severe bruising. The child protection worker described the injury as the worst bruising she had ever seen. E.M.W. was charged and convicted for the injury.

B.L.W. and A.J.W. were placed in foster care. A case plan was developed that required Doe and E.M.W. to attend parenting classes and participate in individual and family counseling. Doe rarely attended the classes and did not complete counseling. A CASA volunteer observed that Doe made little to no progress in the parenting classes or counseling sessions and did not actively participate in the classes. After approximately one year, B.L.W. and A.J.W. returned home from foster care.

In 2011, the child protection worker discovered bruises on B.L.W., which were again caused by E.M.W. Law enforcement declared B.L.W. in imminent danger and placed her in the custody of the Department. Doe knew that B.L.W. was injured but did not believe E.M.W. caused the injury. The magistrate also placed A.J.W. and A.R.W. in temporary shelter care. Both Doe and E.M.W. stipulated to all the children remaining in the Department's custody until the adjudicatory hearing. A.J.W. and A.R.W. were placed in foster care with B.L.W.

During the adjudicatory hearing in 2012, Doe discussed the possibility of getting his own home and having the children live with him, rather than with E.M.W. This never happened,

however. Doe claimed he separated from E.M.W. and lived with his mother. The child protection worker visited Doe's mother's home and found no evidence of Doe living there.

The Department made arrangements for Doe and E.M.W. to participate in parenting classes. Doe only attended some of the classes and did not complete any homework assignments.

The record also describes instances of domestic violence between Doe and E.M.W. B.L.W. testified that she once witnessed Doe hit E.M.W. A.J.W. once witnessed Doe push E.M.W. up against a door. And after Doe asked E.M.W. not to hit K.W., E.M.W. broke a mop over Doe's head. Additionally, A.J.W. once saw E.M.W. abuse B.L.W.

In 2014, Doe and E.M.W. consented to the termination of their parental rights to B.L.W. B.L.W. is much happier with her foster family, who adopted her. The foster family also wants to adopt A.J.W. and A.R.W. to keep the children together. A.J.W. is close with his foster family, and A.R.W. gets along well with the other children in the foster family.

A CASA volunteer favored parental termination because she believed that the younger children should not be in a home that was unfit for an older child (B.L.W.). She observed the children doing much better in the foster home, and she expressed concern that the abuse would continue if the younger children returned home. She also voiced concern about Doe's inability to protect the children from E.M.W.'s abuse and his unwillingness to separate and start a home away from E.M.W. The child protection worker also recommended termination of parental rights to ensure stability and safety for the children.

On September 25, 2013, the Department filed a petition to terminate Doe's parental rights to B.L.W., A.J.W., and A.R.W. As noted, Doe consented to the termination of rights to B.L.W. A trial was held concerning the parental rights over the remaining children. The magistrate entered a judgment terminating Doe's parental rights to A.J.W. and A.R.W., finding that Doe neglected the children and was unable to discharge his parental responsibilities.

## II.

## ANALYSIS

In an action to terminate parental rights, due process requires this Court to determine if the magistrate's decision was supported by substantial and competent evidence. *In re Doe*, 143 Idaho 343, 345, 144 P.3d 597, 599 (2006). Substantial and competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. at 345-46, 144 P.3d

3

at 599-600. This Court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). We conduct an independent review of the record that was before the magistrate. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). *See also Quilloin v. Walcott*, 434 U.S. 246, 255 (1978). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). "Implicit in [the Termination of Parent and Child Relationship Act] is the philosophy that wherever possible family life should be strengthened and preserved . . . ." I.C. § 16-2001(2). Therefore, the requisites of due process must be met when the Department intervenes to terminate the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the Department prove grounds for terminating a parent-child relationship by clear and convincing evidence. *Id.* Idaho Code § 16-2005 permits the Department to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period which will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

A.      **Parental Rights Termination**

Doe argues the magistrate erred in terminating his parental rights because the record is void of any evidence that Doe abused or neglected his children. Idaho Code § 16-2005 requires a court to find grounds for termination of parental rights and also to find that termination of parental rights is in the best interests of the child. Two of the five grounds for termination are relevant here--I.C. § 16-2005(b), neglect or abuse, and I.C. § 16-2005(d), the parent is unable to discharge parental responsibilities for a prolonged period which will be injurious to the health, morals, or well-being of the child.

Turning first to neglect, I.C. § 16-2002(3) provides two definitions of neglect. Most relevant here is subsection (3)(a), which defines conduct as "[c]onduct as defined in section 16-

1602(28), Idaho Code." Idaho Code § 16-1602(28)(a) and (b) further define neglected to mean a child who "is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents . . . or their neglect or refusal to provide them" and "[w]hose parents . . . are unable to discharge their responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for his health, safety or well-being."

Here, the record supports the magistrate's determination that Doe has failed to provide for his children's well-being. According to the various testimonies, Doe was not diligent about seeking or completing counseling services. He did not actively participate in parenting classes, and he failed to complete even one homework assignment for a parenting class. When E.M.W. yelled at the children or made them upset, Doe did not intervene. He was aware that E.M.W. displayed inappropriate behavior toward K.W. concerning K.W.'s body. Doe did not intervene concerning this behavior. Moreover, only once did Doe intervene when E.M.W. abused the children, and two children witnessed Doe hit and push E.M.W. Finally, Doe struggled to discipline his children and never set boundaries for them. The record therefore demonstrates Doe's inabilities to provide for the well-being of his children and discharge his responsibilities to and for his children, which results in the children lacking necessary parental care.

The second applicable factor that provides grounds for parental termination, I.C. § 16-2005(1)(d) (the parent is unable to discharge parental responsibilities for a prolonged period which will be injurious to the health, morals, or well-being of the child), warrants a similar analysis. Doe's inability to discharge parental responsibilities, which is injurious to his children, has been ongoing for years. A social worker first investigated abuse inflicted by E.M.W. in 2004. Doe was aware of E.M.W.'s abuse but did not report it or attempt to remove any of the children from the abusive environment. A case plan was developed after the second abuse incident, which required Doe and E.M.W. to attend parenting classes. Doe did not regularly attend the classes, however. Nor did Doe complete any homework from the parenting classes. Over the course of several years, Doe was not diligent about seeking or completing counseling services, even though E.M.W. mistreated the children. Doe failed to set boundaries or discipline the children. Although A.J.W. witnessed E.M.W. abusing B.L.W., Doe did not try to protect A.J.W. by removing him from E.M.W.'s supervision and care. Moreover, while Doe admitted that E.M.W. caused B.L.W.'s bruises on the first incident of abuse, he did not believe E.M.W.

5

caused B.L.W.'s bruises on the second incident of abuse. The record therefore reflects Doe's ongoing inability to discharge parental responsibilities. Accordingly, Doe neglected A.R.W. and A.J.W. The magistrate therefore did not err in determining that there were sufficient statutory grounds to terminate Doe's parental rights.

A court may grant a petition to terminate parental rights only if one or more of the conditions in I.C. § 16-2005 are found to exist and the court finds that termination is in the best interests of the child. When determining whether termination is in the child's best interests, the trial court may consider: (1) the stability and permanency of the home; (2) unemployment of the parent; (3) the financial contribution of the parent to the child's care after the child is placed in protective custody; (4) improvement of the child while in foster care; (5) the parent's efforts to improve his or her situation; and (6) the parent's continuing problems with the law. *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). The magistrate focused specifically on 1, 4, and 5 in determining that termination of Doe's parental rights was in the best interests of A.J.W. and A.R.W.

First, the record reveals the lack of stability within Doe's home. A.J.W. and A.R.W. were exposed to violence in Doe's home. A.J.W. witnessed E.M.W. abuse B.L.W. and also witnessed Doe push E.M.W.'s head against a door. Both A.J.W. and A.R.W. were at home when E.M.W. abused B.L.W. Moreover, because Doe failed to protect B.L.W. from E.M.W.'s abuse, there is a high risk that Doe would not protect A.J.W. and A.R.W. from E.M.W. In fact, Doe did not even believe that E.M.W. abused B.L.W. (aside from the first instance of abuse). In addition, Doe has expressed his intention to work things out with E.M.W. rather than leave E.M.W. to keep his children safe.

Also, A.J.W. and A.R.W. have improved since entering their foster home. A.J.W. entered foster care with a severe speech impediment. Since being in foster care, his speech impediment has greatly improved. He is happy, has done well in school, has friends, and has formed a close bond with his foster family. Both A.J.W. and A.R.W. get along well with the other children in the foster family. The foster parents adopted B.L.W. and would also like to adopt A.J.W. and A.R.W. B.L.W., A.J.W., and A.R.W. are close and B.L.W. feels it is important for the three to stay together. Even Doe recognized the close relationship between B.L.W., A.J.W., and A.R.W.

6

Finally, Doe has not demonstrated efforts to improve his situation. As discussed, Doe failed to complete a parenting course. He did not complete homework for the parenting classes. He did not complete counseling services. In the counseling services that Doe did attend, a CASA volunteer assigned to the case observed that Doe made little to no progress. Doe discussed the possibility of getting his own home and having the children stay with him. This never happened. At one point, Doe claimed he was separated from E.M.W. and was living with his mother, but the child protection worker assigned to the case inspected Doe's mother's home and found no evidence that Doe was living there. In sum, Doe failed to show efforts to improve his situation.

Because there is substantial and competent evidence to support the findings that parental termination is in the best interests of A.J.W. and A.R.W. and that there are statutory grounds to terminate Doe's parental rights, the magistrate did not err in terminating Doe's parental rights.

**B.     Reunification**

Additionally, Doe contends the Department failed to fulfill its statutory responsibility of reasonable efforts to reunify Doe with his children. However, Doe fails to support his argument with authority. When issues are not supported by propositions of law, argument, or authority, they will not be considered. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). Accordingly, we do not address Doe's argument regarding reunification efforts on the merits.

**C.     Due Process**

Doe further argues that the magistrate violated his Fourteenth Amendment due process rights by not ensuring his right to counsel. "It is axiomatic that preservation of the family unit is a right protected by the due process clause of the Fourteenth Amendment to the United States Constitution, and that a parent has a fundamental liberty interest in maintaining a familial relationship with his or her child." *Doe*, 148 Idaho at 246, 220 P.3d at 1065 (quoting *In Interest of Baby Doe*, 130 Idaho 47, 50, 936 P.2d 690, 693 (Ct. App. 1997)). Accordingly, intervention by the Department to terminate the relationship between a parent and a child must be accomplished by procedures meeting the requisites of due process. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 37 (1981); *Stanley v. Illinois*, 405 U.S. 645, 650-51 (1972). For instance, when a petition to terminate parental rights is initiated, the court must protect the parent's due process rights by appointing competent

counsel if the parent cannot afford counsel. I.C. § 16-2009; *Baby Doe*, 130 Idaho at 52, 936 P.2d at 695. Idaho Code § 16-2009 reads:

> The parent or guardian ad litem shall be notified as soon as practicable after the filing of a petition and prior to the start of a hearing of his right to have counsel, and if counsel is requested and the parent or guardian is financially unable to employ counsel, counsel shall be provided.

Here, the Department did not file a petition to terminate Doe's parental rights until September 25, 2013, almost two years after counsel was first appointed to represent Doe, giving Doe the statutory period of time to comply with the case plan before the termination proceeding. Therefore, the magistrate complied with the due process safeguards outlined in I.C. § 16-2009.

However, Doe argues that his due process rights were violated because he was unrepresented during two shelter care hearings, an adjudicatory hearing, and two review hearings. Although Doe argues that the magistrate erred when it did not protect Doe's constitutional rights to due process, Doe failed to support that claim with argument explaining how his lack of counsel prejudiced him during the parental termination proceedings. This Court is therefore prevented from addressing this argument on the merits. *Zichko*, 129 Idaho at 263, 923 P.2d at 970. Nonetheless, because of what appear to be unorthodox proceedings, this Court is compelled to caution against allowing parents to proceed without representation in any stage of a Child Protection Act (CPA) proceeding without a knowing and voluntary waiver of the right to counsel.

During the December 12, 2011, shelter care hearing, the magistrate acknowledged that Doe had two attorneys prior to the hearing--one had a conflict and the other was unavailable for the hearing. Although the magistrate appointed new counsel on December 13, 2011, Doe was unrepresented for two shelter care hearings, an adjudicatory hearing, and two review hearings. There was continuing confusion as to whether Doe had new counsel. During those hearings, the magistrate expressed concern about Doe's lack of counsel and attempted to find counsel for Doe. The magistrate, however, proceeded with the shelter care hearing on December 12, 2011. Without counsel, Doe stipulated to the jurisdiction under the CPA and agreed that his children should remain in shelter care until the adjudicatory hearing. At the adjudicatory hearing on January 5, 2012, again without counsel, Doe stipulated to the continued placement of his children in foster care. It appears that there was an expectation that the children might be placed in foster care. Doe again requested counsel and the court appointed new counsel for him.

8

Another review hearing was held on August 20, 2012, but once again Doe's counsel did not appear. Counsel first appeared on Doe's behalf on September 5, 2012.[1] The petition for termination was filed on September 25, 2013. Trial was held on November 12, 2014.

Despite being represented by counsel during the termination hearing, this Court finds the above procedure to be of concern. Idaho Code § 16-1611(3) requires that the summons issued to provide notice to the parties that a CPA petition has been filed, "shall notify each of the parents, guardian or legal custodian of their right to retain and be represented by counsel." Additionally, I.C. § 16-1615 provides a right to legal representation in shelter care hearings. While neither I.C. § 16-1611(3) nor I.C. § 16-1615 expressly provide a right to court-appointed counsel for parents who cannot afford counsel, unlike I.C. § 16-2009 in the parental termination setting, Idaho Juvenile Rule 37 grants the parent a right to court-appointed counsel if the parent is financially unable to pay for legal representation during the CPA proceedings.[2] And where there is a statutory right to counsel, the courts should safeguard the right of the parent to have access to counsel for purposes of protecting his or her fundamental liberty interest in the parent-child relationship.

Here, Doe was unrepresented for two shelter care hearings. Shelter care hearings have critical strategic importance, for which it is essential that parents have meaningful legal representation. Doe was also unrepresented at an adjudicatory hearing; a hearing which has important long-term implications for the child and the family. In the January 5, 2012, adjudicatory hearing, although Doe's counsel was not present, the magistrate allowed Doe to stipulate to "keep the matters in the same place in the shelter care hearing," without making the requisite factual findings that the stipulation was knowingly and voluntarily entered. *See* Idaho Juvenile Rule 38. Doe was again without counsel during two of the review hearings, despite the fact that failing to comply with the case plan can be grounds for parental termination.

---

[1] We note that several of the certificates of service between December 13, 2011, when the magistrate appointed new counsel, and September 5, 2012, when counsel first appeared for Doe, did not identify Doe's counsel. This exclusion may have accounted for counsel's absence during the hearings.

[2] Moreover, the Idaho Child Protection Manual indicates that the summons required by Idaho Code § 16-1611(3) must provide essential information to the parents, including "[t]he right to counsel, including appointed counsel for parents who cannot pay for an attorney, and directions for requesting appointed counsel." Idaho Child Protection Manual § 3.3(B) (4th ed. 2015).

Idaho Code § 16-1622(2)(b) mandates that within one year after the child's removal or the court's order taking jurisdiction, the court must hold a permanency hearing. At this hearing, the court must select a permanency goal--family reunification, long-term guardianship, or termination of parental rights and adoption of the child. I.C. §§ 16-1620, 16-1622. If the court determines that the parents have not made substantial progress on the case plan and reunification is not imminent (within three months), the court looks to the concurrent permanency goal--either long-term guardianship or termination of the parental rights and adoption of the child--for resolution of the case. I.C. §§ 16-1621; Idaho Juvenile Rule 44.

By the time the court holds the termination hearing, almost all opportunities for the parent to satisfy the expectations and requirements of the case plan have passed. Having an attorney appointed and present for the termination hearing, without representation in all the stages leading up to the termination hearing, deprives the parent of the ability to meaningfully challenge the termination of his or her parental rights. It is incumbent on the courts to protect the fundamental liberty interest of the parent and the finality and permanence of the final placement of the child.

Despite this Court's concerns, Doe had counsel from September 5, 2012, through November 12, 2014. Doe does not provide argument or authority establishing how lack of counsel during the first nine months of the case, when he had counsel thereafter and could have raised these issues, constitutes a due process violation. Moreover, there was substantial and competent evidence supporting the magistrate's decision granting termination of parental rights. Accordingly, we affirm the magistrate's judgment.

## III.

## CONCLUSION

There is substantial and competent evidence in the record to support the magistrate's decision to terminate Doe's parental rights. Moreover, the argument that the Department failed to fulfill its responsibility of reunification is not properly before this Court. Finally, the magistrate protected Doe's right to counsel during the parental termination proceedings, and therefore did not violate Doe's due process rights. Accordingly, we affirm the magistrate's judgment terminating Doe's parental rights.

Chief Judge MELANSON and Judge HUSKEY **CONCUR**.

10