IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 48526

| In the Matter of: Jane Doe II, A Child Under Eighteen (18) Years of Age. | ) ) ) | |
|---|---|---|
| JOHN DOE I and JANE DOE I, Husband and Wife, | ) ) ) | Filed: May 18, 2021 |
| Petitioners-Respondents, | ) ) | Melanie Gagnepain, Clerk |
| v. | ) ) | |
| JANE DOE (2020-54), | ) ) | |
| Respondent-Appellant. | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Benjamin D. Harmer, Magistrate.

Judgment terminating parental rights, vacated and case remanded.

Marilyn Paul, Twin Falls County Public Defender; Laura A. O'Connell, Deputy Public Defender, Twin Falls, for appellant.

Alan Goodman of Goodman Law Office, Rupert, for respondents.

_____

LORELLO, Judge

Jane Doe (2020-54) appeals from a judgment terminating her parental rights. For the reasons set forth below, we vacate the judgment terminating Doe's parental rights and remand for further proceedings.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe is the mother of the minor child in this action, who was born in 2008. When the child was around two years old, Doe voluntarily placed the child in the care of Jane Doe I (Doe's

1

cousin) and John Doe I (Jane's husband). In 2020, Jane and John petitioned to terminate the parental rights of Doe and the child's putative father and to adopt the child. Doe applied for counsel based on her indigent status and the magistrate court granted her application.

According to the court minutes of the pretrial conference,[1] which Doe did not attend, Doe's counsel stipulated to the admission of Jane and John's exhibits for the termination hearing. The exhibits consisted of a power of attorney executed by Doe authorizing Jane and John to care for the child, documents related to a 2010 petition for deprivation that Jane and John filed in another state, the child's birth certificate, requests for admissions that Doe failed to answer, and fifty pages of handwritten notes. These handwritten notes are unsigned, unsworn and do not identify the authors, although there are indications that they were written by at least two people--Doe's mother and Jane. Some of the notes do not identify who is being discussed or give dates of when events occurred.[2] Additionally, the court minutes show that Doe's counsel also stipulated to holding the termination hearing via online videoconference.

Doe was incarcerated in another state at the time of the termination hearing and briefly participated in the online videoconference using a telephone at the jail. At the beginning of the termination hearing, Doe's counsel represented that she had not spoken with Doe but had "left messages through the jail." Based on this representation, the magistrate court recessed to allow Doe's counsel to talk with Doe. Almost immediately after resuming the hearing, both Doe and her counsel were disconnected from the online videoconference. Doe's counsel eventually

---

[1]     No transcript of this hearing appears in the record.

[2]      For example, a portion of one exhibit is as follows:

II.     History and Pattern of Behavior
     A.     Chronic adversion [sic] to trouble
        1.     Starting [sic] experimenting w/drugs young, lived dangerously & carelessly
        2.     Refused to follow parental rules, defiant to authority (school or law)
        3.     Sent to boarding school: behavior modification facility
        4.     DUI at 17, Cr. Crd theft (me) at 18, ck forgery
        5.     Jail and prison time--drug related (halfway house, violation parole), interlock device
        6.     Arrest in 2010, friend called soc. serv.

reconnected and explained that her office had lost its internet connection temporarily. Doe, however, did not reconnect.

Doe's counsel relayed that she had been able to talk with Doe, but stated, "We're not really able to communicate. I'm not quite sure. I don't think she's really understanding what's going on right now, but it won't do any good for me to talk to her anymore." The magistrate court recessed again to allow Doe's counsel to contact Doe by telephone. After the recess, Doe's counsel informed the magistrate court that Doe intended to reconnect. Counsel also stated, "I don't think [Doe is] understanding what's going on at all."

When Doe failed to reconnect after another recess, the magistrate court asked Doe's counsel about the situation. Doe's counsel responded:

> Your Honor, I don't think [Doe] is very coherent right now. She told me she was going to call back. I spoke with the deputy [at the jail], and I thought he was going to call back. So I don't know.
> She was not understanding what we were doing today. She kept talking about that she has a bus ticket and she wasn't able to use it.
> So I don't know, Your Honor. I would leave it to your discretion.

The magistrate court then asked for comments from Jane and John's counsel, who stated that he was ready to proceed and asked the magistrate court to terminate Doe's parental rights "based on the verified petition, unless the [magistrate court] would like us to produce some additional[3] testimony." When asked if she had a response, Doe's counsel stated, "No, Your Honor," and offered no argument regarding the merits of the petition to terminate Doe's parental rights.

Following these comments from counsel, the magistrate court proceeded with the hearing in Doe's absence. In doing so, the magistrate court reasoned as follows:

> [Doe] did appear for a short time this morning, and where she's not logging back into our session and obviously has the ability to do so and [Doe's counsel] is able to reach [Doe] even after she left the session, the court can only find that she has voluntarily chosen to not reconnect with the session, and so she's voluntarily absent today.

---

[3]  It is not clear why Jane and John's counsel used the word "additional." There was no testimony presented by either party at the termination hearing.

After finding that Doe voluntarily absented herself, the magistrate court discussed the exhibits submitted by Jane and John at the pretrial conference[4] and noted that "it seems like it's appropriate to terminate [Doe's] parental relationship under [I.C. §] 16-2005, let's see, as abandonment, as neglect, and potentially for being unable to discharge parental responsibilities, though it's not been shown exactly why." The magistrate court continued:

> [Doe's counsel] has indicated that there is a possibility that [Doe] is simply not competent to really help [Doe's counsel] with the case, and that's entirely possible. That would speak also to her ability to parent the child and may be some explanation why she's not been engaging as a parent for some time. I don't know. There really hasn't been a showing along those lines.
> But certainly abandonment is a finding the Court can make here, and so the Court will terminate [Doe's] parental rights.

The magistrate court also concluded that it was in the child's best interests to terminate Doe's parental rights. The magistrate court then asked Jane and John's counsel to prepare and submit findings of fact and conclusions of law "for review and signature."

Without altering anything of substance, the magistrate court signed and dated the findings of fact and conclusions of law submitted by Jane and John's counsel. The findings of fact and conclusions of law are limited and largely mirror each other.[5] The magistrate court subsequently entered judgment terminating Doe's parental rights.[6] Doe appeals.

---

[4]     We do not address the sufficiency of the evidence for termination in this appeal; rather, our review is limited to the due process issue discussed herein.

[5]     There appears to be an inconsistency between the magistrate court's oral decision and the written order. During the magistrate court's oral ruling, it noted that Doe's parental rights could be terminated "potentially for being unable to discharge parental responsibilities, though it's not been shown exactly why." This mention of a "potential" ground for termination indicates there was insufficient evidence to support a finding regarding Doe's inability to provide parental care. However, the magistrate court's written order, drafted by Jane and John, contains a finding of fact that Doe is "unable to discharge [her] parental responsibilities for the child." Because this inconsistency has not been raised on appeal, and in light of our ultimate decision to remand, we need not decide whether the inconsistency is sufficient to require remand for new findings and conclusions. *See Doe v. Doe*, 159 Idaho 461, 464-65, 362 P.3d 536, 539-40 (2015).

[6]     The magistrate court also terminated the parental rights of the putative father regarding the child. The decision to terminate his parental rights is not at issue in this appeal.

4

## II.

## ANALYSIS

Doe asserts she was denied her constitutional right to present testimony when the magistrate court proceeded with the termination hearing after she failed to reconnect. Doe also challenges the magistrate court's finding that termination is in the child's best interests. Jane and John respond that the magistrate court did not err by proceeding with the termination hearing without Doe and that the record shows that termination is in the child's best interests.[7] Because Doe's procedural due process right was violated, we vacate the judgment terminating Doe's parental rights. As such, we do not address whether the magistrate court erred in concluding that termination is in the child's best interests.

Doe argues that proceeding with the online termination hearing in her absence violated her constitutional right to present testimony.[8] However, as Jane and John note, Doe's counsel did not object to proceeding in Doe's absence at the termination hearing. Instead, Doe's counsel represented that Doe was not "very coherent" and "was not understanding what [they] were doing," but left "it to [the magistrate court's] discretion" whether to proceed in Doe's absence. By not objecting, Doe failed to preserve this issue for appeal. *See McCandless v. Pease*, 166 Idaho 865, 874, 465 P.3d 1104, 1113 (2020). Doe also did not argue to the magistrate court that she had a constitutional right to present her own testimony or that this right would be violated by proceeding with the hearing in her absence. We also note the magistrate court's pretrial order required Doe to file a list of witnesses she might call at the termination hearing and that she did not file such a list or otherwise indicate that she would testify. Issues not raised below are typically not considered for the first time on appeal. *State, Dep't of Health & Welfare v. Doe (2019-16)*, 166 Idaho 57, 63, 454 P.3d 1140, 1146 (2019). In addition, Doe does not provide any

---

[7] Jane and John also argue that the magistrate court did not err in holding that Doe abandoned the child. Doe has not challenged this holding on appeal and, thus, we do not address Jane and John's arguments regarding abandonment.

[8] Doe asserts "her constitutional right to present testimony" was denied, which could refer to testimony from herself, another witness, or both. However, she asserts this right was denied because she was unable to rejoin the termination hearing, which would not have prevented other witnesses from testifying. Thus, read in context, Doe's argument is that her constitutional right to present her own testimony was violated.

5

citation to legal authority in support of her argument on appeal. This Court generally does not address issues not supported by cogent argument and citation to legal authority, even in a case terminating parental rights. *Idaho Dep't of Health & Welfare v. Doe (2018-24)*, 164 Idaho 143, 147, 426 P.3d 1243, 1247 (2018). Normally, such failures would end our inquiry.

The Court, however, may address certain narrow, unpreserved issues involving due process violations. *Idaho Dep't of Health & Welfare v. Doe (2017-32)*, 163 Idaho 536, 538, 415 P.3d 945, 947 (2018); *State v. Doe*, 144 Idaho 534, 536, 164 P.3d 814, 816 (2007). For example, the Idaho Supreme Court has previously addressed due process errors affecting parents' fundamental rights, including procedural errors and the application of an incorrect standard of review, even though the parties did not raise the issue on appeal. *Doe (2017-32)*, 163 Idaho at 538, 415 P.3d at 947 (addressing procedural error); *Doe*, 144 Idaho at 536, 164 P.3d at 816 (addressing application of incorrect legal standard). We recognize the Idaho Supreme Court has also recently held that a parent failed to preserve his due process argument for appeal and that the "failure to preserve his argument [was] dispositive." *Doe (2019-16)*, 166 Idaho at 63, 454 P.3d at 1146. However, the Idaho Supreme Court did not expressly overrule the two prior opinions noted above in which it addressed unpreserved due process violations. Based on Idaho Supreme Court precedent and the record before us, we deem it appropriate to address Doe's argument because it raises due process concerns related to the termination of her parental rights.

Doe's argument regarding her inability to testify at the online termination hearing raises a constitutional question, over which we exercise free review. *See Doe (2013-12) v. Idaho Dep't of Health & Welfare*, 155 Idaho 36, 37, 304 P.3d 1202, 1203 (2013). Procedural due process requires an opportunity to be heard at a meaningful time and in a meaningful manner. *State, Dep't of Health & Welfare v. Doe*, 130 Idaho 47, 51, 936 P.2d 690, 694 (Ct. App. 1997). Procedural due process is a flexible constitutional principle and calls for such procedural protection as the particular situation demands. *Smith v. Org. of Foster Families for Equal. & Reform*, 431 U.S. 816, 848 (1977); *Doe*, 130 Idaho at 50, 936 P.2d at 693.

Jane and John filed their petition to terminate Doe's parental rights on March 19, 2020. On March 23, 2020, Jane and John filed a motion to waive statutory investigation, arguing that waiver was appropriate due to the "significant time" they had "actual physical care" of the child. The magistrate court granted the motion the following day. Next, on April 14, 2020, Jane and

6

John filed a notice of hearing providing "notice" that the hearing on the petition would be held on June 23, 2020. Although it is unclear from the record when and where Doe was served with the petition, on June 11, 2020, she filed an application for an attorney to be appointed at public expense; the magistrate court granted that request on June 18, 2020, and appointed a public defender to represent Doe. Ultimately, the termination trial was rescheduled for December 4, 2020.

A pretrial conference was held on November 19, 2020, at which Doe was not present, but the parties stipulated to conduct the termination trial via videoconference.[9] Because the appellate record does not include a transcript of the pretrial conference, the basis for the stipulation is unclear as the court minutes only reflect the existence of a stipulation to conduct the termination trial by videoconference but not the reasons for it.[10] On appeal, Doe asserts, without citation to the record, that "it was agreed that the trial would be held by [videoconference]" because Doe "had stated she was unable to afford to travel to Idaho for the trial." Similarly, Jane and John note, also without citation to the record, that there was a stipulation to conduct the termination trial "via [videoconference] in an effort to accommodate [Doe's] apparent difficulty in coming to Idaho for an in-person hearing." However, Jane and John also note that, "in the meantime, [Doe] was arrested and placed in the Larimer County Jail" in Colorado. Based on these unsupported assertions, it appears that, although Doe was not incarcerated when she requested the appointment of counsel,[11] or at the time of the pretrial conference, she was incarcerated at the time of the termination trial.

---

[9] The court minutes also indicate that the magistrate court made "findings regarding [Doe's] case" at the time of the pretrial conference. It is unclear from the record what those findings were or whether they related to the stipulation or some other aspect of the case.

[10] Later, at the termination hearing, the magistrate court noted that "the parties stipulated to have [the termination hearing] via Zoom to accommodate [Doe] being able to appear from Colorado," but did not relate any reason articulated by the parties at the pretrial conference for why Doe would be unable to attend.

[11] Doe's request for the appointment of counsel, signed and dated June 11, 2020, reflects a Colorado address and indicates that, at that time, she was not "currently serving a sentence of incarceration for a crime for which [she] ha[d] been found guilty."

7

We have previously held that, if a parent is incarcerated and unable to appear and testify in person at a termination hearing, then the parent's procedural due process right is protected if counsel has been appointed and the parent has had the opportunity to present testimony by deposition. *Doe*, 130 Idaho at 51-52, 936 P.2d at 694-95. Although an attorney had been appointed to represent Doe for the termination hearing, the record does not indicate whether Doe had the opportunity to present any testimony by deposition. Instead, it appears the plan was to present any potential testimony via videoconference. To this end, Doe was initially present by means of a telephonic connection to the online videoconference. However, Doe ultimately did not have an opportunity to testify because her connection terminated shortly after the hearing began. Consequently, Doe did not have a meaningful opportunity to be heard.

In response to Doe's claim that she was denied her right to present testimony, Jane and John advance two arguments. First, they cite one of our unpublished opinions where we emphasized the need to provide a complete record of the reasons for adopting alternative procedures, such as allowing a parent to appear telephonically for a termination hearing. *State, Dep't of Health & Welfare v. Doe (2020-29)*, Docket Nos. 48199 & 48200 (Ct. App. Dec. 28, 2020). We agree with Jane and John that the record shows that Doe's counsel stipulated to Doe participating remotely because she was unable to attend in person. However, this stipulation does not resolve the issue on appeal--that Doe was unable to present her own testimony. As Jane and John acknowledge, this unpublished case is "not completely on point."

Second, Jane and John rely on the magistrate court's finding that Doe voluntarily absented herself from the termination hearing. Constitutional rights, including the right to procedural due process, can be waived. *See Glengary-Gamlin Protective Ass'n, Inc. v. Bird*, 106 Idaho 84, 90, 675 P.2d 344, 350 (Ct. App. 1983) (noting a due process right may be waived). However, a presumption against waiver applies when a fundamental constitutional right is at stake. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999). A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State, Dep't of Health & Welfare*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). Thus, the presumption against waiver applies to Doe's situation.

The magistrate court found that Doe had "voluntarily chosen to not reconnect with the session, and so [she was] voluntarily absent." We construe "voluntarily chosen" to mean Doe waived her procedural due process right. On appeal, we defer to a trial court's findings of fact that are supported by substantial evidence. *KDN Mgmt., Inc. v. WinCo Foods, LLC*, 164 Idaho 1, 7, 423 P.3d 422, 428 (2018). The magistrate court found a waiver because Doe had initially connected (showing she had the ability to connect) but had not reconnected after a brief recess. However, Doe's counsel had informed the magistrate court that Doe would attempt to reconnect, showing Doe's intent to do so. Although the record does not reveal why Doe did not reconnect, the record is also insufficient to support the conclusion that her failure to do so was a voluntary choice to waive any of her rights. If anything, the record evidences concern that Doe was "not coherent," did not know what was "going on at all," and "was not understanding what [they] were doing" on the date of the termination hearing. We cannot conclude, based on this record, that Doe waived her procedural due process right when the only information presented was that Doe did not understand the nature of the proceedings.[12] In light of the presumption against waiver, the evidence relied on by the magistrate court does not support the finding that Doe waived her procedural due process right. Consequently, Doe's procedural due process right to be heard in a meaningful manner was violated. As such, we vacate the judgment terminating Doe's parental rights to the child and remand for further proceedings.

## III.

## CONCLUSION

The magistrate court erred by proceeding with the termination hearing in Doe's absence. Accordingly, the judgment terminating Doe's parental rights is vacated and the case is remanded to the magistrate court for further proceedings.

Judge BRAILSFORD and Judge Pro Tem HORTON, **CONCUR**.

---

[12] To the extent Doe was not competent, she could have sought appointment of a guardian ad litem under I.C. § 16-2007(5).