**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 48269**

| | |
|---|---|
| In the Interest of: ) | |
| John Doe I, Jane Doe I, John Doe II, and ) | |
| Jane Doe II, Children Under Eighteen (18) ) | |
| Years of Age. ) | |
| STATE OF IDAHO, DEPARTMENT OF ) | |
| HEALTH AND WELFARE, ) | **Filed: December 23, 2020** |
| ) | |
| Petitioner-Respondent, ) | **Melanie Gagnepain, Clerk** |
| ) | |
| v. ) | |
| ) | |
| JANE DOE (2020-33), ) | |
| ) | |
| Respondent-Appellant. ) | |
| ) | |

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Laurie A. Fortier, Magistrate.

Judgment terminating parental rights, affirmed.

Anthony R. Geddes, Ada County Public Defender; Karen L. Jennings, Deputy Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John R. Shackelford, Deputy Attorney General, Boise, for respondent.

---

BRAILSFORD, Judge

Jane Doe (Mother) appeals from the judgment terminating her parental rights to her four minor children: John Doe I (born September 2009), Jane Doe I (born May 2011), John Doe II (born November 2015), and Jane Doe II (born September 2018). We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The Idaho Department of Health and Welfare received repeated referrals about Mother's children including that Mother left the children unattended, was aggressive towards them, used drugs, and that domestic violence was occurring in the home. Then, in September 2018, the

1

Department received a referral that Mother had tested positive for THC during childbirth and that the newborn, Jane Doe II, had also tested positive for drugs, including methamphetamine. A Boise police officer went to Mother's home to investigate, found drug paraphernalia in the home and found that the home was in poor condition. As a result, Mother's five minor children[1] were declared in imminent danger and placed in foster care.

Mother stipulated to the magistrate court's jurisdiction under the Idaho Child Protective Act, Idaho Code §§ 16-1601-1647, and in November 2018, the court granted the Department custody of the children and ordered a case plan for Mother to perform. This plan required Mother to maintain stable housing free from safety hazards, to demonstrate her ability to meet the children's basic needs, to complete substance abuse screening, to submit to random drug testing, and to maintain regular contact with the children's service providers, among other tasks.

Beginning in December 2018, Mother was allowed an extended home visit with all of the children until March 2019 when Mother tested positive for drugs. Then again in August 2019, Mother was allowed a second extended home visit with the three older children until November 2019 when she tested positive for drugs and also missed drug tests. In March 2020, Mother went to Georgia for a funeral.[2] Mother did not return to Idaho but instead remained in Georgia where she lived with the father of some of the children in his two-bedroom apartment. Mother explained she remained in Georgia because of the COVID-19 pandemic.[3]

In June 2020, the Department served on Mother in Georgia its petition to terminate her parental rights to the four youngest children, and the magistrate court scheduled a termination hearing for August 5. On July 31, Mother moved to continue the hearing or alternatively to be allowed to appear and to testify by video teleconference (video) because she was incarcerated in Georgia and did not know whether she would be able to post bond and travel to Idaho for the hearing. With this motion, Mother's counsel filed a statement representing that the Georgia jail

---

[1]    Although the oldest of these five minor children was a subject of the child protection case, the Department did not petition to terminate Mother's parental rights to that child, and Mother's parental rights to that child are not at issue in this appeal.

[2]    At the termination hearing, Mother also inconsistently referred to her trip to Georgia as a "vacation."

[3]    Despite the COVID-19 pandemic, Mother did return to Idaho from Georgia at least twice after March 2020 but before the August 2020 termination hearing.

2

in which Mother was incarcerated had "webex capability." On the same day that Mother filed her motion, the Department filed a notice stating the hearing had been rescheduled from August 5 until August 10.[4]

On August 4, the magistrate court denied Mother's motion to continue the termination hearing. The court, however, indicated that if the parties stipulated to Mother testifying by video, the court would allow such testimony pursuant to Idaho Rule of Civil Procedure 7.2(a)(2). On August 6, the parties stipulated to allow Mother to testify by video, and the following day, the court ordered that Mother could testify by video and otherwise be present by telephone to listen to the hearing.

The magistrate court held the termination hearing on August 10. Mother's counsel appeared in person, and Mother was present on the telephone and testified by video. The other witnesses who testified at the hearing were present in person including two Department caseworkers, the children's foster parents, the guardian ad litem, the girlfriend of Mother's adult son, and Mother's probation officer. Following the hearing, the court entered written findings of fact and conclusions of law and a decree terminating Mother's parental rights.[5] The court concluded that Mother had neglected the children under I.C. § 16-2002(3)(a) by failing to provide the care and control necessary for the children's well-being and, alternatively, under I.C. § 16-2002(3)(b) by failing to complete her case plan and that termination of Mother's parental rights is in the children's best interests. Mother timely appeals.

## II.

## ANALYSIS

### A.     Motion for Continuance

On appeal, Mother argues the magistrate court erred by not granting her request for a continuance of the termination hearing. Whether to grant a motion for a continuance is within the trial court's sound discretion. *State, Dep't of Health & Welfare v. Doe (2019-39)*, 166 Idaho 546, 557, 462 P.3d 74, 85 (2020). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court:

---

[4]     The reason for this continuance is unclear from the record.

[5]     The magistrate court also concluded that the father of John Doe I and Jane Doe I had abandoned them and terminated his parental rights. *See* I.C. § 16-2005(a) (providing parental rights may be determined for abandonment). He has not appealed this decision.

3

(1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process." *Doe (2019-39)*, 166 Idaho at 557, 462 P.3d at 85 (quotations omitted). Rather, "the answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Id.*

In support of Mother's motion for a continuance, Mother simply stated a continuance was necessary "because [Mother] is incarcerated in Georgia [and she does not know] if she will be able to post bail and travel to Idaho for her trial." On appeal, Mother's argument clarifies she sought an indefinite continuance, arguing "the trial should have been continued until Mother could return to Idaho." The entirety of Mother's argument on appeal is that:

> Mother should have been allowed the time to hopefully get back to Idaho to be here in person. [The] COVID[-]19 pandemic combined with Mother's incarceration in Georgia hampered her ability to return to Idaho to be here in person during the child protection case. Mother should not be at the whim of the fallout of a pandemic.

In response, the Department asserts Mother failed to explain how the magistrate court abused its discretion or how the court's denial of her motion for a continuance "affected her substantial rights." We agree.

Mother has failed to assert any cogent argument challenging the denial of her motion for a continuance of the termination hearing. For example, Mother does not articulate any abuse of discretion, does not identify any factors weighing in favor of continuing the termination hearing indefinitely or otherwise, does not assert any due process violation, and does not identify any prejudice resulting from the denial of her motion. Further, Mother does not cite any supporting authority. This Court will not consider an issue not supported by cogent argument or by citation to legal authority--even in an appeal from the termination of parental rights. *See Idaho Dep't of Health & Welfare v. Doe (2018-24)*, 164 Idaho 143, 147, 426 P.3d 1243, 1247 (2018) (declining to consider whether court erred by denying parent's request to continue termination hearing because issue was not supported by cogent argument and authority).

Moreover, the magistrate court did not abuse its discretion by denying Mother's motion for a continuance. Although the Idaho Supreme Court's emergency orders for public safety and

4

to mitigate the spread of COVID-19 provide that termination trials are to be held in person,[6] Rule 7.2 of the Idaho Rules of Civil Procedure still remains in effect. As the magistrate court noted in its order denying Mother's motion for a continuance, Rule 7.2(a)(2) provides that a court may allow testimony by video if the parties so stipulate. In response to this order, the parties did stipulate to allow Mother's testimony by video and to allow her presence otherwise by telephone. Because Mother stipulated to proceeding in this manner in lieu of continuing the termination hearing, the invited error doctrine precludes her from challenging the magistrate court's denial of her motion for a continuance. *See State v. Barr*, 166 Idaho 783, 786, 463 P.3d 1286, 1289 (2020) (stating purpose of invited error doctrine is to prevent party who caused or played important role in prompting court to take action from later challenging that decision on appeal).

Furthermore, providing for Mother's testimony and her presence at the termination hearing remotely versus delaying the hearing indefinitely until Mother was released from incarceration in Georgia and returned to Idaho was neither an abuse of discretion nor a violation of Mother's procedural due process rights. *See State, Dep't of Health & Welfare v. John Doe*, 130 Idaho 47, 52, 936 P.2d 690, 695 (Ct. App. 1997) (noting "'convict does not have a constitutional right to personally appear in a civil suit where he has been permitted to appear through counsel and by deposition, if appropriate'"; adopting balancing test to determine whether incarcerated parent had right to appear personally at termination hearing; and concluding court did not abuse discretion by affording alternate means of presenting parent's testimony).

**B.     Termination of Parental Rights**

On appeal, Mother also challenges the magistrate court's conclusions that she neglected the children and that termination of her parental rights is in the children's best interests. Again, Mother fails to make any cogent legal argument or to cite any supporting legal authority. Rather, Mother argues only that:

---

[6]     *See* Order in re: Emergency Reduction in Court Services and Limitation of Access to Court Facilities (October 8, 2020 ("All trials on a petition to terminate parental rights . . . shall be held in person, subject to the safety protocols. . . ."); Order in re: Jury Trials (July 24, 2020) (noting April 22, 2020 order remains in effect except as modified for jury trials); Order in re: Emergency Reduction in Court Services and Limitation of Access to Court Facilities (April 22, 2020) ("All trials on a petition to terminate parental rights . . . shall be held in person, subject to the safety protocols . . . .").

5

These findings [of neglect and the children's best interests] are appealed. Just because the state gave up on Mother does not mean that it is in the best interest of the children for Mother to have her rights terminated. No one knows the history of the children better than Mother. Mother never gave up trying to get back with her children and in a world of uncertainty and strife, no one will be able to help the children with their perspective about life more than Mother.

Despite challenging the magistrate court's factual findings, Mother does not identify any finding which she contends is not supported by substantial and competent evidence. Instead, she adopts nearly all the court's findings stating in her "Statement of Facts" in her opening brief that "the facts [in the court's] fact synopsis [are] generally sufficient [except Mother] denies the conclusions regarding her culpability for the missed [urinalysis tests] and any manipulations regarding the urine used." Mother's limited argument is inadequate to preserve for appeal her challenges to the court's factual findings. *See Doe (2018-24)*, 164 Idaho at 147, 426 P.3d at 1247 (declining to consider whether court erred by denying parent's request to continue termination hearing because issue was not supported by cogent argument and authority). Nonetheless, we hold that substantial and competent evidence supports the court's decision to terminate Mother's parental rights.

1.      **Standard of review**

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

### 2. Neglect

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

Idaho Code Section 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) in turn provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case; the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months; and reunification has not been accomplished by the last day

7

of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

In this case, the magistrate court concluded Mother neglected the children under I.C. § 16-2002(3)(a) by failing to provide the children with the care and control necessary for their well-being and, alternatively, under I.C. § 16-2002(3)(b) by failing to complete her case plan. Substantial and competent evidence supports these alternative conclusions. This evidence includes that, although Mother generally worked on her case plan when in Idaho, she went to Georgia in March 2020 without having permission to leave the jurisdiction, violated her probation in Idaho by doing so, did not return to Idaho to work her case plan, and ultimately became incarcerated in Georgia. During this time, Mother did not maintain approved housing for the children, did not provide proof of her income to demonstrate her ability to meet the children's financial needs, and did not maintain regular contact with the children's service providers as her case plan required.

Further, Mother's substance abuse impaired her ability to parent the children, and she failed to address her substance abuse issues as required by the case plan. As the magistrate court found, Mother repeatedly tested positive for drugs, devised a contraption to use the children's urine for drug testing, submitted a number of diluted urine samples, and missed an estimated 143 urinalysis tests. While Mother "denies . . . her culpability for the missed [urinalysis tests] and any manipulations regarding the urine used," the testimony of Mother's probation officer and of another witness familiar with Mother's efforts to use the children's urine for drug testing supports the court's findings regarding Mother's drug testing. Accordingly, we hold the court did not err by concluding Mother neglected the children.

### 3. Children's best interests

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the

8

law.  *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014).  A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds.  *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

Substantial and competent evidence supports the magistrate court's finding that termination of Mother's parental rights is in the best interests of the children.  This evidence includes, for example, the testimony of the guardian ad litem that the children were improving in foster care; Mother's continued problems with the law, including her multiple probation violations in Idaho and her incarceration in Georgia; the lack of a permanent, stable home for the children; and Mother's failure to maintain sobriety and to otherwise address her substance abuse issues.  Although Mother contends her testimony clearly established her love for the children, "love does not always translate into the ability to discharge parental responsibilities."  *Idaho Dep't of Health & Welfare v. Doe (2014-17)*, 157 Idaho 694, 703, 339 P.3d 755, 764 (2014).  Mother's love for the children does not overcome the magistrate court's conclusion, which is supported by substantial and competent evidence, that terminating Mother's parental rights is in her children's best interests.

### III.

### CONCLUSION

Mother fails to support her appellate issues with any cogent argument or citation to any supporting legal authority.  Nonetheless, we hold that the magistrate court did not abuse its discretion by denying Mother's motion for a continuance of the termination hearing.  Further, we hold that substantial and competent evidence supports the court's conclusions that Mother neglected the children and that termination of her parental rights is in the children's best interests.  Accordingly, we affirm the judgment terminating Mother's parental rights.

Judge GRATTON and Judge LORELLO **CONCUR**.

9