# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket Nos. 53148 and 53137

| | | |
|---|---|---|
| In the Interest of:<br>John Doe I and John Doe II,<br>Children Under Eighteen (18) Years of Age.<br>-------------------------------------------------- | ) ) ) ) | |
| JANE DOE, | ) ) | |
|    Petitioner-Respondent, | ) ) | |
| v. | ) ) | Boise, October 2025 Term |
| JOHN DOE (2025-36), | ) ) | Opinion Filed: May 12, 2026 |
|    Respondent-Appellant. | ) ) ) | OPINION ON ORDER TO SHOW CAUSE |
| In the Matter of:<br>Jane Doe II and Jane Doe III,<br>Children Under Eighteen (18) Years of Age.<br>------------------------------------------------------ | ) ) ) ) ) | Melanie Gagnepain, Clerk |
| JANE DOE, | ) ) | |
|    Petitioner-Respondent, | ) ) | |
| v. | ) ) ) | |
| JOHN DOE (2025-33), | ) ) | |
|    Respondent-Appellant. | ) ) | |

Eric D. Fredericksen, State Public Defender, Boise, argued.

Christopher Boyd, Canyon County Prosecuting Attorney, Caldwell, for Canyon County. Aaron Bazzoli argued.

Stanley Mortensen, Kootenai County Prosecuting Attorney, Coeur d'Alene, for Kootenai County, argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Intervenor State of Idaho. Gader Wren argued.

------------------------

1

BRODY, Justice.

This matter concerns an indigent parent's constitutional right to counsel at public expense in a private termination case and a county's obligation to bear the cost of preparing a clerk's record and hearing transcripts on appeal.

## I. BRIEF SUMMARY

For more than sixty years, Idaho law provided indigent parents facing termination of their parental rights with a categorical right to an attorney at public expense. *See* Act of Mar. 19, 1963, ch. 145, § 9, 1963 Idaho Sess. Laws 420, 427–28 ("The parent or guardian ad litem shall be notified as soon as practicable after the filing of a petition and prior to the start of a hearing of his right to have counsel, and if counsel is requested and the parent or guardian is financially unable to employ counsel, counsel shall be provided.").

Historically, Idaho's forty-four counties paid for those attorneys. In some cases, the indigent parent—usually one involved in a termination proceeding brought by the Idaho Department of Health and Welfare under the Child Protective Act ("CPA termination case")—was represented by a county public defender. In other cases, the indigent parent—usually one involved in a termination proceeding initiated by a private party, such as an ex-spouse ("private termination case")—was represented by an attorney who contracted with the county to provide those services.

All of this changed in 2025 when the Idaho Legislature passed Senate Bill 1181 as part of an effort to address the newly appointed State Public Defender's ("SPD") obligation to represent indigent parents in termination cases. To begin with, the bill eliminated the categorical right to counsel in all termination cases. *See* Act of Apr. 14, 2025, ch. 329, § 3, 2025 Idaho Sess. Laws 1354, 1355. The law now provides that indigent parents facing termination of their parental rights are only entitled to representation at public expense if it is "constitutionally required":

> The parent or guardian ad litem shall be notified as soon as practicable after the filing of a petition and prior to the start of a hearing of his right to have counsel and, if counsel is requested and the parent or guardian is financially unable to employ counsel, counsel shall be provided <u>only if such representation is constitutionally required</u>.

*Id*. (underlining in original) (codified at I.C. § 16-2009(2)). The bill also made it clear that the SPD's obligation to defend indigent parents in termination cases extends only to CPA termination cases, not private termination cases. *Id*. § 7, at 1360 (amending I.C. § 19-6009). The bill then prohibited Idaho's counties from being required to provide indigent defense services in cases for

2

which the SPD is not responsible. *Id*. That begs the question: if representation is constitutionally required in a private termination case, who would provide it?

In the wake of these changes, this Court now has before it two appeals in private termination cases that started before Senate Bill 1181 was enacted. In the first case, the father is incarcerated in Idaho and was represented in the termination proceeding by an attorney provided by Kootenai County ("Kootenai County case"). That attorney has now filed a motion to withdraw from the appeal because he does not do appellate work. In the second case ("Canyon County case"), the father is also incarcerated. When his appeal was filed, an order was entered obligating the SPD to pay the clerk's record fee (a preparation fee paid to the Canyon County Clerk) and the transcript preparation fee (a preparation fee paid directly to the court reporters). The SPD objected, contending the office has no obligation to provide representation in private termination cases or pay any associated appellate costs. We consolidated these two cases and issued an order to show cause to address these issues.

As explained below, we hold, first, that an indigent parent in a private termination case may have a constitutional right to appointed counsel, including on appeal. The right to counsel is not categorical and must be determined on a case-by-case basis after a hearing. Second, after the passage of Senate Bill 1181, there is no identified state agency or other political subdivision that has a statutory responsibility to provide constitutionally required representation in private termination cases. This gap created by Senate Bill 1181 is a vitally important matter that needs to be addressed by the Idaho Legislature. If constitutionally required representation cannot be provided in private termination cases, it will likely result in serious delays or even dismissals of cases affecting Idaho's children and parents. It may mean that children awaiting adoption cannot be adopted. Third, every indigent parent appealing from a judgment terminating the parent-child relationship is constitutionally entitled to have the record and transcripts necessary for appeal provided at public expense. In private termination cases where a parent is not represented at public expense, those costs must be waived and paid from the appropriate county district court fund.

## II. FACTS AND PROCEDURAL HISTORY

### A. Kootenai County Case – Docket No. 53148-2025

In *Doe v. Doe (2025-36)* (*In re: John Doe I and John Doe II, Children Under Eighteen (18) Years of Age*), Docket No. 53148-2025 ("Kootenai County case"), a mother filed a petition in November 2023 in Kootenai County to terminate the parental rights of her children's incarcerated

3

father. After the withdrawal of the father's private attorneys, the magistrate court appointed a Kootenai County public defender to represent the father. Shortly after the appointment, the Kootenai County public defender filed a notice of conflict, indicating that the matter would be referred to an attorney outside of the office. About a month later, the magistrate court entered an order requiring that an attorney enter a notice of appearance. The State Public Defender, who had just taken responsibility for providing statewide indigent defense services, filed a motion to set aside the appointment, contending that it was not statutorily authorized or required to represent parents in private termination cases. The magistrate court set aside the appointment and appointed new counsel in November 2024 to be paid from a county district court fund. In July 2025, the magistrate court granted the mother's petition to terminate the father's parental rights. Though he was represented by counsel, the father filed a pro se notice of appeal to this Court. Appointed counsel then moved this Court to permit him to withdraw from the case, stating that he does not provide representation on appeal.

## B. Canyon County Case – Docket No. 53137-2025

In *Doe v. Doe (2025-33)* (*In re: Jane Doe II and Jane Doe III, Children Under Eighteen (18) Years of Age*), Docket No. 53137-2025 ("Canyon County case"), a mother and her husband filed a petition in May 2024 in Canyon County to terminate the parental rights of her children's incarcerated father and to allow for their adoption by her husband. In June 2024, the magistrate court appointed a Canyon County public defender to represent the father. On October 1, 2024, the day the SPD took over statewide responsibility for providing indigent public defense services, the Canyon County public defender filed a motion to withdraw, contending that the counties were no longer responsible for providing indigent defense and the case was not in the purview of the State Public Defender. The magistrate court agreed and appointed new counsel in November 2024 to be paid for by Canyon County. In July 2025, the magistrate court granted the petition terminating the father's parental rights. Appointed counsel filed a timely notice of appeal. On August 11, 2025, an order was entered directing the SPD to pay the estimated fee for preparation of a transcript for the appeal. On September 5, 2025, the SPD filed an objection, arguing that it did not represent the father and, under Idaho Code section 19-6009, it was not responsible for expenses associated with representation in private termination cases.

## C. Consolidation and Order to Show Cause

4

On September 8, 2025, this Court issued an order consolidating the Kootenai County case and the Canyon County case to consider an order to show cause why the SPD or the counties should not be responsible for the representation of indigent parents and payment of costs in private termination cases. We directed the fathers in both cases, the SPD, Canyon County, and Kootenai County to brief the following questions:

1. Is a parent entitled to counsel on appeal at public expense pursuant to Idaho Code section 16-2009 as it existed prior to July 1, 2025 when a party other than the State of Idaho filed the petition for termination prior to the change in law and the parent has previously been provided counsel at public expense?

2. If the parent is entitled to counsel on appeal at public expense pursuant to Idaho Code section 16-2009 as it existed prior to July 1, 2025, who is responsible for paying for such representation and for the costs associated with the appeal, including the appellate filing fee and fees for preparation of the clerk's record and any reporter's transcripts?

3. Under Idaho Code section 16-2009 as it currently exists, and upon the request of a parent, is the appointment of counsel on appeal at public expense constitutionally required in a termination of parental rights case initiated by a private party rather than the State of Idaho? Address in your response whether the parent's status as an inmate at a correctional facility is a factor to be considered in the constitutional analysis.

4. If a parent's representation by counsel on appeal is constitutionally required, who is responsible for paying for such representation and for the costs associated with the appeal, including the appellate filing fee and fees for preparation of the clerk's record and any reporter's transcripts?

We provided the Idaho Attorney General with notice of this matter so that he would have the opportunity to intervene on behalf of the State and address these questions. We also invited the State Appellate Public Defender to submit briefing as amicus curiae.

This Court held oral argument on October 30, 2025. Following that hearing, this Court issued a second order for briefing, asking the parties to address three additional questions:

1. Does an indigent party have a statutory right to appointed counsel at public expense when the state seeks the involuntary termination of the party's parental rights?

2. If an indigent party has a right to appointed counsel at public expense when the state seeks the involuntary termination of the party's parental rights, does the right to equal protection under either the state or federal constitutions require the appointment of counsel at public expense when a private party seeks the involuntary termination of an indigent party's parental rights?

3. Does the Idaho Parental Rights Act, Idaho Code sections 32-1010 through 32-1014, affect the answer to the question whether an indigent party has a right to

5

appointed counsel in proceedings for the involuntary termination of the party's parental rights?

Now, after considering the parties' briefing and hearing oral argument, this Court issues the following decision.

## III. ANALYSIS

### A. The prior version of Idaho Code section 16-2009 did not provide the father in the Kootenai County case with a statutory right to counsel on appeal.

The first question this Court asked the parties to brief concerned whether the father in the Kootenai County case had a statutory right to counsel on appeal based on Idaho Code section 16-2009 as it existed in November 2023, when the petition to terminate his parental rights was filed by the mother of his children. We begin our inquiry with this question because counsel for the father in the Kootenai County case seeks to withdraw. If the prior version of the statute provides a right to counsel on appeal, then it would likely be unnecessary to address the nature and scope of any constitutional right under the amended statute. We hold, however, that Idaho Code section 16-2009, as it existed in 2023, did not provide a statutory right to counsel on appeal. Instead, it provided a right to counsel only in connection with the termination hearing held before the magistrate court.

In November 2023, section 16-2009 provided indigent parents a categorical right to counsel in connection with private termination hearings before the magistrate court:

> Cases under this act shall be heard by the court without a jury. The hearing may be conducted in an informal manner and may be adjourned from time to time. Stenographic notes or mechanical recording of the hearing shall be required. The general public shall be excluded and only such persons admitted whose presence is requested by any person entitled to notice under the provisions of section 16-2007, Idaho Code, or as the judge shall find to have a direct interest in the case or in the work of the court; provided that persons so admitted shall not disclose any information secured at the hearing which would identify an individual child or parent. The court may require the presence of witnesses deemed necessary to the disposition of the petition, except that a parent who has executed a waiver pursuant to section 16-2007, Idaho Code, shall not be required to appear at the hearing.

> The parent or guardian ad litem shall be notified as soon as practicable after the filing of a petition *and prior to the start of a hearing* of his right to have counsel, *and if counsel is requested and the parent or guardian is financially unable to employ counsel, counsel shall be provided.* The prosecuting attorneys of the several counties shall represent the department at all stages of the hearing.

> The court's finding with respect to grounds for termination shall be based upon clear and convincing evidence under rules applicable to the trial of civil

6

causes, provided that relevant and material information of any nature, including that contained in reports, studies or examinations, may be admitted and relied upon to the extent of its probative value. When information contained in a report, study or examination is admitted in evidence, the person making such report, study or examination shall be subject to both direct and cross-examination.

I.C. § 16-2009 (Supp. 2023) (emphasis added).

This statute was titled "Hearing" and addressed the nature and conduct of the hearings in the magistrate court on petitions for termination. *Id.* It addressed, for example, the formality of the hearing, when it could be adjourned, how it would be recorded, who could be present, the attendance of witnesses, and the evidence that could be admitted. *Id.* As to counsel, it provided that the parent subject to the petition must be notified "prior to the start of a hearing" of the right to have counsel, and "[t]he prosecuting attorneys of the several counties shall represent the department at all stages of the hearing." *Id.* Importantly, the focus of the statute was on the termination hearing, not any appeal from it.

Though chapter 20, title 16, Idaho Code, included a section providing a right to appeal, it did not provide a right to counsel on appeal. *See* I.C. § 16-2014 (Supp. 2023) ("Any appeal from an order or decree of the court granting or refusing to grant a termination shall be taken to the supreme court, provided however, pendency of an appeal or application therefor shall not suspend the order of the court relative to termination of the parent-child relationship."). The legislature understands how to grant a statutory right to counsel extending through appeal. *See, e.g.*, I.C. § 20-514(2)(b) (providing that, under the Juvenile Corrections Act, a juvenile's right to representation includes the right "[t]o be represented in any appeal"). Similarly, the Child Protective Act provides that the right to counsel extends to all proceedings "under the chapter," and the chapter includes a section providing for appeals. *See* I.C. § 16-1614 (providing that the right to counsel under the Child Protective Act applies to "any proceeding under this chapter," and Idaho Code section 16-1625 is a section of that chapter providing for proceedings on appeal). Nothing similar was included in chapter 20, title 16, Idaho Code.

Given the plain language of section 16-2009 as it existed in 2023, and the absence of any indication in chapter 20, title 16, Idaho Code, that the right to representation extended through appeal, we conclude that the father's statutory right to counsel in the Kootenai County case was limited to the termination proceeding before the magistrate court. That right did not extend to his appeal to this Court.

**B. Whether an indigent parent has a constitutional right to representation in a private termination case under the current version of section 16-2009 must be determined on a case-by-case basis.**

The next question we asked the parties to address was whether an indigent parent in a private termination case has a constitutional right to representation. Section 16-2009 now provides that, if counsel is requested and the parent whose rights are at stake "is financially unable to employ counsel, counsel shall be provided *only if such representation is constitutionally required*." I.C. § 16-2009(2) (emphasis added). The amendment eliminates any independent statutory right to counsel, leaving only a right to representation if it is constitutionally required. We hold that due process may require the appointment of counsel at public expense for indigent parents in private termination cases, including on appeal. That determination must be made on a case-by-case basis after a hearing.

Both the Idaho Constitution and the United States Constitution guarantee "due process of law" before any person may be deprived of life, liberty, or property. Idaho Const. art. I, § 13; U.S. Const. amend. XIV, § 1. "A parent has a fundamental liberty interest in maintaining a relationship with his or her child." *Roe v. Doe* (*In re Adoption of Doe*), 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). "[T]he interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). "In the face of the fundamental right to parent," this Court has recognized that "the State must 'provide parents with fundamentally fair procedures' before termination of parental rights may occur." *Doe I v. Doe (2020-49)* (*In re Doe II*), 169 Idaho 170, 179, 492 P.3d 1129, 1138 (2021) (quoting *Santosky v. Kramer*, 455 U.S. 745, 754 (1982)) (holding that parent whose parental rights were terminated was denied due process because the petition failed to provide adequate notice of the grounds for termination).

A fundamentally fair procedure may require that counsel be appointed to indigent parents opposing termination. The United States Supreme Court held as much nearly fifty years ago in *Lassiter v. Department of Social Services of Durham County, N.C.*, 452 U.S. 18 (1981). Lassiter was an incarcerated mother whose parental rights were terminated through proceedings at which she was not represented. *Id.* at 20–24. On appeal, she argued that she was denied due process because she should have been appointed counsel. *Id.* at 24. The Supreme Court rejected any categorical rule, declining to hold either that due process always or never requires that counsel be appointed when an indigent parent opposes termination. *Id.* at 31. Instead, the Supreme Court held

that "the decision whether due process calls for the appointment of counsel for indigent parents in termination proceedings" involves a case-by-case inquiry that is "to be answered in the first instance by the trial court, subject, of course, to appellate review." *Id.* at 31–32.

Though the Supreme Court recognized a "presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty," *id.* at 26–27, it held that the presumption may be overcome or rebutted when there are sufficiently weighty due process concerns, *id.* at 31. To determine whether, in a particular case, due process requires appointment of counsel, a court must look to the three elements articulated in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976): "the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions." *Lassiter*, 452 U.S. at 27. If the parent's interests are sufficiently strong, the opposing interests are sufficiently weak, and there is a sufficiently high risk that the procedures used will lead to an erroneous decision, the presumption that counsel is required only where there is a risk to physical liberty may be overcome. *Id.* at 31–32.

The Supreme Court, this Court, and Idaho statutes have all recognized the strength of the interest a parent has in maintaining the parent-child relationship. An indigent parent's "right to 'the companionship, care, custody and management of his or her children' is an important interest that 'undeniably warrants deference and, absent a powerful countervailing interest, protection.'" *Id.* at 27 (quoting *Stanley v. Illinois*, 405 U.S. 645, 651 (1972)). Terminations "work[ ] a unique kind of deprivation," because the loss of parental rights is both irreversible and total. *Id.* "Few consequences of judicial action are so grave as the severance of natural family ties." *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (citation modified) (quoting *Santosky*, 455 U.S. at 787 (Rehnquist, J., dissenting)). "A parent has a fundamental liberty interest in maintaining a relationship with his or her child." *Roe v. Doe* (*In re Adoption of Doe*), 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Idaho also statutorily recognizes the centrality and importance of the parent-child relationship. Section 16-2001 provides the Idaho Legislature's statement of purpose for permitting termination of the parent-child relationship and explains the philosophy behind the statutory framework:

> Implicit in this chapter is the philosophy that wherever possible family life should be strengthened and preserved and that the issue of severing the parent and child relationship is of such vital importance as to require a judicial determination in place of attempts at severance by contractual arrangements, express or implied, for the surrender and relinquishment of children. Nothing in this chapter shall be construed to allow discrimination in favor of, or against, on the basis of disability.

I.C. § 16-2001(2). Likewise, the Idaho Parental Rights Act, I.C. §§ 32-1010 to 32-1014, provides that parental rights are "fundamental," "unalienable," "implicit in the concept of ordered liberty," and "deeply rooted in our nation's history and tradition." I.C. § 32-1010(2), (4), (6).

The strength of a parent's interest as a factor in a due process analysis can vary, though. For example, unlike a biological mother, "a biological father is not entitled to due process [in a termination proceeding] simply due to a biological connection to the child." *Doe I v. Doe (2024-23)* (*In re Doe II*), 175 Idaho 412, ___, 566 P.3d 409, 432 (2025) (citing *Jane Doe I v. John Doe II (2022-06)* (*In re John Doe II*), 170 Idaho 901, 907–08, 517 P.3d 830, 836–37 (2022)). Rather, "[a] father is entitled to procedural due process where he demonstrates significant personal contact with his child and a full commitment to parental responsibility." *Id.* Evidence regarding a mother's connection to the child is also relevant. In *Lassiter*, for example, the Supreme Court ultimately determined that due process did not require appointment of counsel, relying in part on the fact that Lassiter had consistently failed to make efforts to vindicate her parental rights and involve herself in prior proceedings regarding the child. *Lassiter*, 452 U.S. at 32–33 (in determining Lassiter had not been denied due process, noting "the weight of the evidence" that she had taken no real interest in her child and failed to participate in prior custody hearings).

The indigent parent may have other interests at stake as well. While a termination proceeding does not itself involve a risk to physical liberty, it may involve allegations of criminal conduct that could prompt or impact criminal investigations or proceedings. The parent-child relationship may be terminated, for example, where the parent "has neglected or abused the child[.]" I.C. § 16-2005(1)(a)(ii). That conduct could be criminal under Idaho Code section 18-1501, governing injury to a child. Many, perhaps most, petitions involving allegations of potentially criminal conduct will not be private terminations; they will instead be filed in an action under the Child Protective Act. There is no reason to believe, though, that only the State will ever seek termination on these grounds. A parent's interest in preserving the parent-child relationship "may be supplemented by the dangers of criminal liability inherent in some termination proceedings." *Lassiter*, 452 U.S. at 31. When a petition involves or is likely to involve allegations of potential criminal conduct, the indigent parent subject to the petition "may need legal counsel to guide them in understanding the problems such petitions may create." *Id*. at 27 n.3.

When the State is requesting the relief implicating due process—here, termination of the parent-child relationship—the second *Eldridge* factor focuses on the "[g]overnment's interest,

including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Eldridge*, 424 U.S. at 335. *Lassiter* framed the analysis that way because a state entity was the petitioner in that case. But where a private party requests the relief implicating due process, the second *Eldridge* factor focuses instead on "the interest of the party seeking the . . . remedy, with, nonetheless, due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections." *Connecticut v. Doehr*, 501 U.S. 1, 11 (1991) (applying *Eldridge* analysis to hold that statutory procedure for a private party's pre-judgment attachment of real property violated due process).

Whether filed by the State or a private party, the prevailing interest competing with a parent's interest in maintaining the parent-child relationship should be the "best interests of the child." I.C. § 16-2005 (permitting termination of the parent-child relationship only where it is in the best interests of the child). As the Supreme Court in *Lassiter* recognized, that consideration likely weighs in favor of appointing counsel:

> If, as our adversary system presupposes, accurate and just results are most likely to be obtained through the equal contest of opposed interests, the . . . interest in the child's welfare may perhaps best be served by a hearing in which both the parent and the [petitioner] acting for the child are represented by counsel, without whom the contest of interests may become unwholesomely unequal.

*Lassiter*, 452 U.S. at 27–28.

There are also competing interests in efficiency, both in terms of time and money. A petitioner, whether the State or a private party, "wishes the termination decision to be made as economically as possible and thus wants to avoid both the expense of appointed counsel and the cost of the lengthened proceedings his presence may cause." *Id.* at 28. Though "legitimate," the Supreme Court in *Lassiter* suggested that those interests, at least for the State, are "hardly significant enough to overcome private interests as important as those here." *Id.* When a private party is filing the petition, that interest is more significant. A private petitioner with limited resources, who may also be unrepresented, has a stronger interest in efficiency than does the State, given its resources. Even for such a private party, though, that interest is weighed against a parent's "commanding" interest in "the accuracy and justice of the decision to terminate his or her parental status," *id.* at 27, which is an interest that should be shared by the private petitioner.

The interest in resolving the matter quickly may converge with the interest in the well-being of the child. Reason to think there is a risk of imminent or short-term danger to a child is a

reason it may be undesirable to complicate and extend the proceedings, which appointment of counsel may do. Importantly, though, the Child Protective Act provides a separate mechanism for addressing urgent concerns regarding a child's well-being. *See* I.C. § 16-1601 (explaining that the Child Protective Act is intended to provide "a legal framework conducive to the judicial processing, including periodic review of child abuse, abandonment and neglect cases, and the protection of any child whose life, health or welfare is endangered"). Though that is so, a private termination may still involve urgent concerns regarding the child's health and welfare.

The third *Eldridge* factor concerns "the risk that a parent will be erroneously deprived of his or her child because the parent is not represented by counsel." *Lassiter*, 452 U.S. at 28. This factor will likely involve the most variation from case to case. While many petitions may be factually and legally straightforward, that can vary dramatically. "[T]he ultimate issues with which a termination hearing deals are not always simple, however commonplace they may be." *Id.* at 30. They may involve "[e]xpert medical and psychiatric testimony, which few parents are equipped to understand and fewer still to confute." *Id.*; *see also Idaho Dep't of Health & Welfare v. Doe II* (*In re Doe*), 149 Idaho 474, 477–78, 235 P.3d 1195, 1198–99 (2010) (addressing the issue whether expert testimony was properly admitted under Idaho Rule of Evidence 702 in a termination proceeding). Even when the petitioner does not seek to introduce expert testimony, the magistrate court addressing a petition can order an investigation and written report from the Idaho Department of Health and Welfare or a licensed adoption agency. I.C. § 16-2008(2). Where information in the report is admitted, the author of the report is subject to both direct and cross-examination. I.C. § 16-2009(3).

Indigent parents whose rights are at stake may "be people with little education, who have had uncommon difficulty in dealing with life, and who are, at the hearing, thrust into a distressing and disorienting situation." *Lassiter*, 452 U.S. at 30. They may not be well-positioned to address complicated factual and legal issues or to cross-examine experts or investigators. As in both of the cases at issue here, the parent opposing termination may also be incarcerated, making it even more difficult for an unrepresented parent to navigate the process and address disputed factual and legal questions. *See L.E.S. v. C.D.M.* (*In re Adoption of K.A.S.*), 390 P.3d 278, 287–88 (Utah 2016) (noting difficulties accessing and navigating court processes encountered by incarcerated parent as indication counsel should have been appointed); *State, Dep't of Health & Welfare v. Doe* (*In re Baby Doe*), 130 Idaho 47, 52, 936 P.2d 690, 695 (Ct. App. 1997) (holding that where incarcerated,

out-of-state father could not personally appear at termination hearing, due process was nevertheless satisfied where father was appointed counsel). The risk of error may be further exacerbated when there is a significant disparity between the resources and sophistication of the petitioning party and the indigent parent. *See Lassiter*, 452 U.S. at 44 (Blackmun, J., dissenting) (concluding in dissent that due process always requires that indigent parents be appointed counsel when the State seeks to terminate parental rights, pointing to "the gross disparity in power and resources between the State and the uncounseled indigent parent"). That disparity is more evident when the State is the petitioner, but it may also be present where the petitioner is a private party.

Applying these factors, the Supreme Court determined that Lassiter was not denied due process by the failure to appoint counsel. *Id.* at 33 (majority opinion). The petition "contained no allegations of neglect or abuse upon which criminal charges could be based, and hence Ms. Lassiter could not well have argued that she required counsel for that reason." *Id.* at 32. "[N]o expert witnesses testified and the case presented no specially troublesome points of law, either procedural or substantive." *Id.* "[T]he weight of the evidence that she had few sparks of . . . interest [in her son] was sufficiently great that the presence of counsel for Ms. Lassiter could not have made a determinative difference." *Id.* at 32–33. Finally, Lassiter failed to appear at previous child custody hearings; did not bother to speak to her counsel appointed in an unrelated criminal matter regarding the termination; and failed to "make an effort to contest the termination proceeding . . . ." *Id.* at 33.

Idaho law includes a variety of safeguards against error in termination proceedings. Parents facing possible termination of their parental rights are entitled to notice. I.C. § 16-2008(2). They are entitled to a hearing before a neutral magistrate court at which witnesses may appear and be cross-examined. I.C. § 16-2009. The magistrate court can order the investigations and reports discussed above. I.C. § 16-2008(2). The magistrate court's findings in an order granting termination must be supported by clear and convincing evidence. I.C. § 16-2009(3). Parents also have a statutory right to appeal. I.C. § 16-2014.

For more than sixty years, though, the State judged that these safeguards alone were inadequate and required that counsel be appointed for any indigent parent opposing termination of the parent-child relationship. Because the Idaho Legislature has now eliminated that safeguard, we are left with the constitutional standard. In accordance with *Lassiter*, due process does not require the appointment of counsel in every case. It may, however, require the appointment of counsel in particular cases. Where an indigent parent opposes a petition for termination of parental rights in

a private termination case, is unrepresented, and requests counsel, the magistrate court must conduct a hearing in accordance with *Lassiter* to determine whether due process requires that counsel be appointed. That analysis is necessarily fact-dependent, and, as the United States Supreme Court has recognized, it is not possible or prudent to formulate a precise set of guidelines to be followed when determining whether the appointment of counsel is constitutionally required:

> Here, as in *Scarpelli*, "[i]t is neither possible nor prudent to attempt to formulate a precise and detailed set of guidelines to be followed in determining when the providing of counsel is necessary to meet the applicable due process requirements," since here, as in that case, "[t]he facts and circumstances . . . are susceptible of almost infinite variation . . . ."

*Lassiter*, 452 U.S. at 32 (alterations in original) (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973)). Nonetheless, it is helpful to outline some broad factors a magistrate court may consider when doing the *Eldridge* balancing, such as:

- The indigent parent's contacts with the child.

- Whether the indigent parent has made a full commitment to parental responsibility.

- Whether the indigent parent has made efforts to protect or vindicate parental rights in other legal proceedings, such as Child Protective Act proceedings, divorce proceedings, guardianship proceedings, or civil protection order proceedings.

- Whether the grounds for termination include allegations of abuse or neglect or other conduct that could implicate the indigent parent's liberty interest.

- Whether there are urgent concerns regarding the health and welfare of the child, and whether appointment of counsel would unduly delay or extend the termination proceeding.

- Whether the party initiating the termination proceeding is represented by counsel.

- Whether there is a significant disparity between the resources and sophistication of the indigent parent and the party seeking termination.

- The education and sophistication of the indigent parent.

- Whether the indigent parent is incarcerated and the indigent parent's ability to meaningfully participate in the proceeding.

- The extent to which the termination proceeding involves factual disputes.

- The extent to which the termination proceeding presents novel legal issues.

- Whether the termination proceeding is likely to involve complex expert testimony.

The AG, the SPD, and the SAPD suggest that, under *Lassiter*, due process could never require appointment of counsel for an indigent parent opposing a private termination. We disagree. Although the petition at issue in *Lassiter* was filed by a state entity, *Lassiter*'s holding is not limited to those petitions. That the State is the petitioner may be relevant to the analysis. For example, when the State brings its resources to bear against an unrepresented indigent parent, there is likely a significant disparity in resources that may suggest a heightened risk of error under the third factor of the *Eldridge* analysis. Second, as discussed above, when a private party is a petitioner, the second step of the *Eldridge* analysis is modified slightly to accommodate consideration of the private petitioner's interests. None of that, though, suggests that due process can only require appointment of counsel for an indigent parent if the State is the petitioner.

The briefing suggests that *Lassiter* can require the appointment of counsel only when the indigent parent may be deprived of their physical liberty, which is not a risk in a private termination. That is a misreading of *Lassiter*. As discussed above, the Supreme Court in *Lassiter* reviewed its prior holdings addressing when appointed counsel is constitutionally required and recognized a "generalization" or "presumption" that counsel must be appointed "only where the litigant may lose his physical liberty if he loses the litigation." 452 U.S. at 25–27. But the Supreme Court held that the generalization or presumption may be "rebut[ted]" or "overcome" when "the parent's interests [are] at their strongest, the State's interests [are] at their weakest, and the risks of error [are] at their peak." *Id.* at 31; *see also Hughen v. Highland Ests.*, 137 Idaho 349, 351, 48 P.3d 1238, 1240 (2002) ("In civil cases, where personal liberty is not threatened, there exists a rebuttable presumption that the claimant is not entitled to appointed counsel" (citation modified)).

The Supreme Court noted that "the petition to terminate Ms. Lassiter's parental rights contained no allegations of neglect or abuse upon which criminal charges could be based, and hence Ms. Lassiter could not well have argued that she required counsel for that reason." *Lassiter*, 452 U.S. at 32. If even an attenuated threat to physical liberty posed by a hypothetical criminal proceeding was necessary for appointed counsel to be required, the analysis could have ended there. Instead, the Supreme Court continued the *Eldridge* analysis. An allegation of criminal (or potentially criminal) conduct is a factor that favors appointment of counsel and "supplement[s]" a parent's interest in preserving the parent-child relationship, *id.* at 31, but it may be necessary to appoint counsel even where there are no such allegations.

15

Contrary to the AG's briefing, the Supreme Court's decision in *Turner v. Rogers*, 564 U.S. 431 (2011), also does not support the view that a threat to physical liberty is a necessary condition for entitlement to appointed counsel. *Turner* addressed whether an indigent litigant facing civil contempt was entitled to appointed counsel because the proceedings might result in incarceration. 564 U.S. at 441. The question in *Turner* was whether the threat of incarceration was a *sufficient* condition for the appointment of counsel. *See id.* The Supreme Court discussed *Lassiter* only to note that the "presumption" identified there provided no support for that proposition. *Id.* at 442–43. It characterized *Lassiter* as having noted that the Supreme Court "previously had found a right to counsel '*only*' in cases involving incarceration, not that a right to counsel exists in *all* such cases . . . ." *Id.* at 443. Nothing in *Turner* undermines the holding in *Lassiter* that the general rule is rebuttable or may be overcome.

Next, the briefing suggests that procedural due process may not be required in private terminations because there is no "state action" for purposes of the Fourteenth Amendment. That is mistaken. The Fourteenth Amendment to the United States Constitution "can be violated only by conduct that may be fairly characterized as 'state action.'" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). It is incorrect, however, to suggest that state action for purposes of a procedural due process claim exists only when the State seeks the relief. Both the Supreme Court and this Court have consistently applied procedural due process principles to judicial proceedings between private parties. *See, e.g.*, *Herrera v. Estay*, 146 Idaho 674, 681, 201 P.3d 647, 654 (2009) (addressing, in a suit between private parties, whether service of process was adequate to satisfy due process requirements); *Sniadach v. Fam. Fin. Corp. of Bay View*, 395 U.S. 337, 341–42 (1969) (holding that statutory scheme for pre-judgment wage-garnishment violated procedural due process).

More to the point, both the Supreme Court and this Court have applied the Fourteenth Amendment to invalidate procedural aspects of private terminations. For example, in *Doe I v. Doe (2020-49)* (*In re Doe II*), this Court held that a private termination failed to provide procedural due process where the petition did not give adequate notice of the grounds for termination. 169 Idaho 170, 179–80, 492 P.3d 1129, 1138–39 (2021). In *M.L.B. v. S.L.J.*, the Supreme Court held that the Fourteenth Amendment prohibited a requirement that indigent parents appealing from orders terminating the parent-child relationship pay for transcripts necessary for appeal. 519 U.S. 102, 106–07 (1996). Though the Supreme Court acknowledged that "the termination proceeding in this

16

case was initiated by private parties as a prelude to an adoption petition, rather than by a state agency," it concluded that the "challenged state action remains essentially the same: M.L.B. resists the imposition of an official decree extinguishing, as no power other than the State can, her parent-child relationships." *Id.* at 116 n.8.

The State established a statutory mechanism by which parents may be deprived of a fundamental right. Even in private terminations, and setting aside court involvement, a state entity can be involved in the decision whether to do so. *See* I.C. § 16-2008(2) (providing for investigations by the Department of Health and Welfare). The courts administer the process, and only a judicial determination can terminate the parent-child relationship. I.C. § 16-2001(2) (recognizing that "the issue of severing the parent and child relationship is of such vital importance as to require a judicial determination"). Private termination cases unquestionably invoke state action sufficient to require procedural due process.

That conclusion is consistent with *Meisner v. Potlatch Corp.*, 131 Idaho 258, 954 P.2d 676 (1998), cited in the briefing. In *Meisner*, the plaintiff filed a complaint stating a claim that a private pension plan violated the Equal Protection Clause of the Fourteenth Amendment by discriminating against unmarried participants. *Id.* at 260, 954 P.2d at 678. The district court granted summary judgment dismissing all claims. *Id.* On appeal, recognizing that "a violation of the Fourteenth Amendment requires state action," Meisner argued that "the state action requirement was met by the district court's grant of summary judgment" dismissing the claim. *Id.* at 262–63, 954 P.2d at 680–81. This Court rejected that argument, holding that "[t]he pension plan in question was clearly a private contract" between private parties, and it did not become "state action" simply because the court adjudicated a claim with respect to it. *Id.* at 263, 954 P.2d at 681. That conclusion is entirely consistent with the proposition that a process the State itself developed and administers must satisfy procedural due process.

That proposition is also consistent with *Murray v. Dalton*, 174 Idaho 593, 558 P.3d 1057 (2024). Under the Idaho Parental Rights Act, I.C. §§ 32-1010 to 32-1014 ("IRPA"), "governmental efforts" that restrict or interfere with parental rights may be subject to strict scrutiny. I.C. § 32-1010(6). In *Murray*, this Court held that an order entered in a guardianship proceeding initiated by a private party was not a "governmental effort" to limit or restrict parental rights as that term is used in the IPRA. *Id.* at 600–01, 558 P.3d at 1064–65. For three reasons, *Murray* does not support the view that procedural due process requirements are inapplicable to private termination cases.

17

First, *Murray* involved the interpretation of language in the IPRA, not whether there was state action for purposes of the Fourteenth Amendment. The Court cited and discussed certain cases addressing the state action requirement, including *Meisner*, but primarily to respond to an argument made by the appellant. *Id.* at 600, 558 P.3d at 1064. *Murray* should not be taken to stand for the proposition that "governmental efforts" under the IPRA and state action for purposes of the Fourteenth Amendment are equivalent.

Second, the issue in *Murray* was whether the guardianship order, or the proceeding itself, was a "governmental effort" to limit parental rights. *See id.* at 600, 558 P.3d at 1064 ("[A] guardianship judgment 'does not convert an action initiated by private citizens into a State action.'" (quoting *Nicholson v. Bennett (In re Guardianship of Doe)*, 166 Idaho 720, 725, 462 P.3d 1184, 1189 (Ct. App. 2020))). The Court concluded that it was not. *Id. Murray* did not concern whether the procedures adopted by the State were required to satisfy due process requirements.

Third, the issue in *Murray* concerned a guardianship order, not an order terminating the parent-child relationship. *See id.* at 596, 558 P.3d at 1060 (noting that mother "asks this Court to reverse the decision of the magistrate court denying her petition to terminate the guardianship"). The Court was careful to distinguish the guardianship order at issue in *Murray* from the "termination of parental rights," which "is a much more permanent alteration of the parent-child relationship . . . ." *Id.* at 603, 558 P.3d at 1067. While a termination of the parent-child relationship is "a permanent eradication" of that relationship, "a guardianship addresses who cares for the child during the child's minority." *Id.* In the latter, "[t]he parent-child relationship, although temporally and spatially changed during a guardianship, is not terminated." *Id.* That distinction is significant for the question of whether there is state action. As the Supreme Court noted in *M.L.B.*, only the State can terminate the parent-child relationship. *M.L.B.*, 519 U.S. at 116 n.8; *see also* I.C. § 16-2001(2) (recognizing that "the issue of severing the parent and child relationship is of such vital importance as to require a judicial determination").

We hold that procedural due process may require that counsel be appointed to represent an indigent parent opposing termination of the parent-child relationship in private termination cases. Whether it does so is an inquiry to be conducted in the first instance by the magistrate courts, guided by this opinion and the analysis in *Lassiter*. If an indigent parent is unrepresented and requests counsel in a private termination proceeding, the court must determine whether due process requires that counsel be appointed at public expense.

18

**C. An indigent parent constitutionally entitled to representation at public expense in a private termination case is also entitled to representation on appeal.**

An indigent parent opposing termination of the parent-child relationship may be constitutionally entitled to representation at public expense. *Lassiter* does not, however, resolve whether a parent constitutionally entitled to counsel in a private termination hearing is also constitutionally entitled to counsel on appeal from an order terminating the parent-child relationship. Though there is ordinarily no right to appointed counsel for an indigent party appealing from a civil judgment or order, that fact follows from the more general principle that there is ordinarily no right to appointed counsel for an indigent party in civil matters.

In a series of cases, the United States Supreme Court has addressed how indigency can interfere with meaningful access to appellate review, and when services at public expense may be required. Those cases, and particularly *M.L.B.*, support our conclusion that meaningful access to appeal includes representation by appointed counsel when a magistrate court has already determined that the parent is entitled to counsel under *Lassiter* and appeals from a judgment terminating the parent-child relationship.

The Supreme Court first addressed the question of meaningful access to appellate review in *Griffin v. Illinois*, 351 U.S. 12 (1956). *Griffin* addressed whether due process and equal protection rights required that indigent appellants challenging criminal convictions be provided transcripts necessary to support an appeal at public expense. *See id.* at 16. Though the Supreme Court acknowledged that there is no constitutional entitlement to appellate review, it determined that due process and equal protection principles preclude a state from "invidious discrimination[ ]" as to meaningful access to such review when it is provided. *Id.* at 18 (holding that "at all stages of the proceedings the Due Process and Equal Protection Clauses protect persons like petitioners from invidious discriminations"). Where a state makes appellate review an "integral part" of the adjudicatory process, "[t]here is no meaningful distinction between a rule which would deny the poor the right to defend themselves in a trial court and one which effectively denies the poor an adequate appellate review accorded to all who have money enough to pay the costs in advance." *Id.* According to the Supreme Court, due process and equal protection rights require that indigent defendants "be afforded as adequate appellate review as defendants who have money enough to buy transcripts." *Id.* at 19. As a result, where transcripts are necessary for such review, they must be provided at public expense to an indigent defendant appealing from a criminal conviction.

In *Douglas v. California*, the Supreme Court extended the analysis in *Griffin* to hold that "fair procedure" requires that an indigent defendant appealing a criminal conviction be provided counsel for a first appeal as a matter of right. 372 U.S. 353, 357–58 (1963). To reach that conclusion, the Supreme Court relied centrally on *Griffin*. *Id.* at 355–58. The Supreme Court concluded that "where the merits of the one and only appeal an indigent has as of right are decided without benefit of counsel [because the defendant could not afford one and the state would not appoint one], we think an unconstitutional line has been drawn between rich and poor." *Id.* at 357. "[T]he evil is the same [as in *Griffin*]: discrimination against the indigent" resulting in "the kind of an appeal a man enjoys [being] depend[ent] on the amount of money he has." *Id.* at 355 (citation modified) (quoting *Griffin*, 351 U.S. at 19). "[W]here the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf," the indigent appellant "is forced to shift for himself" and is thereby denied a "meaningful appeal." *Id.* at 357–58.

Though the appellants in *Douglas* were convicted of felonies, *id.* at 353, its holding was not expressly limited to criminal convictions of any particular degree or to appellants sentenced to incarceration, *id.* at 356 (noting that what was at issue were appeals as of right from "criminal conviction[s]"). The Supreme Court subsequently held in *Scott v. Illinois* that whether an indigent defendant has a right to appointed counsel in a criminal trial turns on the "sever[ity]" of the "sanction." 440 U.S. 367, 372–73 (1979). "[A]ctual imprisonment [is] the line defining the constitutional right to appointment of counsel" because "actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment." *Id.* at 373. Though *Douglas* predated *Scott*, the Supreme Court has subsequently suggested that the limitation on the right to trial counsel recognized in *Scott* is likewise a limitation on the right to appellate counsel recognized in *Douglas*. *See M.L.B.*, 519 U.S. at 113 (after citing *Scott* for the proposition that the "right [to trial counsel] does not extend to nonfelony trials if no term of imprisonment is actually imposed," citing *Douglas* for the proposition that a "State's obligation to provide appellate counsel to poor defendants faced with incarceration applies to appeals of right").

*Griffin*, *Douglas*, and *Scott* jointly support three propositions important here. First, even where there is no constitutional entitlement to appellate review, the Fourteenth Amendment may require meaningful access to appellate review when there is a statutory right to appeal. Second, meaningful access may require that counsel on appeal be appointed at public expense. Third, what

counts as meaningful access is determined in part by the severity of the outcome appealed from. In addition, *M.L.B.* suggests that the right to trial counsel and the right to appellate counsel are connected, at least insofar as a limitation on one is a limitation on the other. *See* 519 U.S. at 113–14.

Most relevant here, the Supreme Court directly applied *Griffin*, *Douglas*, and *Scott* in *M.L.B.* to address meaningful access to appellate review in the context of an appeal from an order terminating the parent-child relationship. *See id.* at 110–13, 116–17. The issue there was closely related to the issue in *Griffin*: whether due process and equal protection require that an indigent parent appealing from an order terminating the parent-child relationship be provided a transcript necessary for appeal at public expense. *Id.* at 106–07. The Supreme Court concluded that transcripts must be provided at public expense. *Id.* at 107, 128. That result turns significantly on the uniqueness and severity of orders terminating the parent-child relationship and the insignificance of the labels "criminal" or "civil" for purposes of determining what meaningful access to appeal requires. *Id.* at 119–28.

The Supreme Court framed its analysis as answering the question whether, for purposes of entitlement to a transcript necessary for appeal, appeals from orders terminating the parent-child relationship should be "classified" with criminal cases (in which indigent appellants are entitled to transcripts) or with the "mine run" of civil cases (in which they are not). *Id.* at 110–19. Citing *Lassiter*, it began by noting that proceedings for termination of the parent-child relationship stand apart from ordinary civil cases for purposes of entitlement to appointed counsel below. *Id.* at 116–19. While appointed counsel is not required in ordinary civil cases, appointed counsel may be required in termination proceedings. *Id.* at 117. Likewise, though there is no general right to transcripts on appeal at public expense in "the broad array of civil cases," there is such a right for indigent defendants appealing criminal convictions. *Id.* at 110–16.

The Supreme Court determined that, for purposes of entitlement to transcripts necessary to support an appeal, indigent parents appealing from orders terminating the parent-child relationship should be classified with criminal defendants appealing convictions. *Id.* at 123–24, 127–28. It recognized that termination proceedings are not ordinary, run-of-the-mill civil matters, but instead involve the "awesome authority" to permanently terminate the parent-child relationship. *Id.* at 127–28. An indigent parent opposing termination of parental rights is "[l]ike a defendant resisting criminal conviction" in that he is seeking to avoid the "devastatingly adverse action" embodied in

21

an order terminating the parent-child relationship. *Id.* at 125. The nature of an indigent parent's right of access to appeal should not turn on the "label 'civil'" but on the uniquely serious, permanent, and severe outcome reflected in an order terminating the parent-child relationship. *Id.* at 128. As a result, the Supreme Court placed "decrees forever terminating parental rights in the category of cases in which the State may not bolt the door to equal justice." *Id.* at 124 (citation modified).

The Supreme Court's analysis in *M.L.B.* drives the result we reach here. An indigent parent constitutionally entitled to counsel in a private termination hearing and appealing from a judgment terminating the parent-child relationship cannot properly be classified with appellants in the mine run of civil cases for purposes of entitlement to counsel on appeal. Under *Lassiter*, the severity of the termination of the parent-child relationship is not alone sufficient to entitle an indigent parent to representation at public expense. It is not alone sufficient to entitle an indigent parent to representation on appeal, either. But a determination under *Lassiter* that a fair proceeding requires representation in a termination hearing necessarily colors what constitutes meaningful access to appeal from an order terminating the parent-child relationship.

The uniqueness of orders terminating the parent-child relationship, the severity of those orders, and the effects on a parent's "commanding" interest in the parent-child relationship are no different at the termination hearing than on appeal. On appeal from a judgment terminating the parent-child relationship, termination is not merely a possibility; it is an actuality absent a successful appeal. An indigent parent incapable of managing the legal and procedural issues below is likely no more capable of navigating standards of review, preservation rules, claims of substantive legal error, and sufficiency challenges on appeal. Where a wealthy parent appealing as of right from a judgment terminating the parent-child relationship "enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf," the indigent appellant "is forced to shift for himself." *Douglas*, 372 U.S. at 357–58.

When a magistrate court has already determined that the proceedings present an unacceptable risk of error if the indigent parent is required to proceed pro se, requiring the parent to proceed pro se on appeal denies that parent a "meaningful appeal." Accordingly, we hold that where a magistrate court determines that an indigent parent is entitled to counsel under *Lassiter*, the parent is also entitled to counsel on appeal.

22

**D. The recent amendments to Idaho Code section 19-6009 fail to address financial responsibility for constitutionally required representation of indigent parents in private termination cases, thereby creating a risk that private termination proceedings will fail to comply with due process.**

Having determined that indigent parents in private termination cases may be constitutionally entitled to counsel at public expense, the question remains as to who is responsible for providing those services. The recent amendments to Idaho Code section 19-6009 in Senate Bill 1181 do not answer the question.

Section 19-6009, a provision of the State Public Defender Act, was amended in an effort to clarify both the SPD's and the counties' responsibilities:

> (3) Upon a finding of indigency, representation by an attorney under subsection (1) of this section shall include the following cases, excluding those cases where the state appellate public defender has jurisdiction pursuant to section 19-5905, Idaho Code, and excluding those cases of guardian ad litem representation pursuant to section 16-1614(4), Idaho Code:
>
>> (a) Felony and misdemeanor cases;
>>
>> (b) Actions arising under the Idaho juvenile corrections act, chapter 5, title 20, Idaho Code;
>>
>> (c) Proceedings under the uniform post-conviction procedure act, chapter 49, title 19, Idaho Code;
>>
>> (d) Civil contempt proceedings where incarceration is sought;
>>
>> (e) Actions arising under the child protective act, chapter 16, title 16, Idaho Code, but excluding actions brought exclusively under chapter 20, title 16, Idaho Code; and
>>
>> (f) Appeals from adjudicatory decrees or orders under section 16-1625, Idaho Code.
>
> (4) The office of the state public defender shall be required to provide indigent defense services only in cases listed in subsection (3) of this section, provided that such limitations shall not obligate a county to finance or oversee indigent defense service for any action not provided for in this chapter.
>
> (4) (5) An indigent person's right to a benefit under subsection (1) or (2) of this section is unaffected by his having provided a similar benefit at his own expense, or by his having waived it, at an earlier stage.

Act of Apr. 14, 2025, ch. 329, § 7, 2025 Idaho Sess. Laws 1354, 1360 (codified at I.C. § 19-6009) (underlining and strikethrough in original). While the references to titles and chapters of the Idaho Code in these amendments make the statute cumbersome to read, in plain terms, the amendments mean the SPD must provide representation to indigent parents in CPA termination cases, but not

23

in private termination cases. Section 19-6009(4) goes a step further, providing that the counties do not have to step into the gap created by limitations on the SPD's responsibilities and cannot be required to "finance or oversee indigent defense service for any action not provided for in this chapter." I.C. § 19-6009(4). Private termination cases are "not provided for" in the services listed in section 19-6009(3), which means that, while an indigent parent in a private termination proceeding may be entitled to representation at public expense, neither the SPD nor the counties can be required to provide them with representation.

If neither the SPD nor the counties can be required to provide representation, a private termination proceeding may fail to comply with the requirements of due process. The legislature has eliminated the options available to courts for appointment of counsel at public expense. Section 19-6009(4) provides that the SPD and the counties cannot be "required" or "obligate[d]" to provide this representation. I.C. § 19-6009(4). It does not, however, prevent them from voluntarily doing so to ensure that parents receive the representation to which they are entitled. For some indigent parents who require representation, there may also be counsel available and willing to provide pro bono representation. In other cases, a private petitioner seeking termination may reasonably calculate that it ultimately benefits them to ensure that the proceedings comply with due process requirements and may actually pay for the indigent parent to secure counsel when they have the resources to do so. While we cannot predict with certainty how many indigent parents will be constitutionally entitled to representation, experience tells us that we cannot rely on pro bono representation or the generosity and resources of others to ensure due process of law in private termination cases. We have little doubt that, so long as the representation gap created by Senate Bill 1181 exists, at least some indigent parents who constitutionally require representation will not get it.

It is important to note that it is the legislature, not this Court, that has the authority to determine the scope of the SPD's responsibilities. We do not hold that section 19-6009 is unconstitutional, or even that the legislature is required to fund a mechanism to provide indigent parents representation in private terminations. Importantly, indigent parents do not possess a right to appointed counsel that is violated by Idaho Code section 19-6009. What they possess are due process rights that require certain procedural safeguards before a magistrate court can properly order a certain outcome: here, termination of the parent-child relationship. *See State v. Rhoades*,

24

120 Idaho 795, 806, 820 P.2d 665, 676 (1991) (noting procedural due process asks whether "procedural safeguards are adequate" considering *Eldridge* analysis).

If due process requires that an indigent parent be represented in a particular case and the magistrate court is unable to appoint counsel, any judgment terminating the parent-child relationship entered in the proceeding may be vacated on appeal or even subject to collateral attack years later. *See Doe I v. Doe (2020-54)* (*In re Doe II*), 169 Idaho 82, 86, 88–89, 491 P.3d 644, 648, 650–51 (Ct. App. 2021) (vacating judgment terminating the parent-child relationship where magistrate court violated parent's procedural due process rights by continuing with videoconference hearing after parent was disconnected). This means that magistrate courts, rather than risk entry of a voidable judgment, may be forced to delay private termination cases for extended periods of time or even dismiss them when there is no mechanism to appoint constitutionally required counsel for an indigent parent. We recognize the legislature has no obligation to provide a mechanism for private terminations at all. Having done so, though, whether judgments entered in those proceedings are enforceable may turn on the legislature's choice to carve out private terminations from the scope of the SPD's responsibilities. The question of whether and how to fund a mechanism for providing counsel in these proceedings is a vitally important matter for the legislature.

**E. An indigent parent appealing a judgment terminating the parent-child relationship is entitled to the record and transcripts necessary for appeal at public expense.**

Every indigent parent appealing from an order terminating the parent-child relationship is entitled to have the record and transcripts necessary for appeal provided at public expense. The United States Supreme Court's decision in *M.L.B. v. S.L.J.*, 519 U.S. 102 (1996), squarely held as much. The Fourteenth Amendment does not permit a state to "withhold from [an indigent appellant seeking review of an order terminating the parent-child relationship] a record of sufficient completeness to permit proper appellate consideration of her claims." *Id.* at 128 (citation modified) (quoting *Mayer v. City of Chicago*, 404 U.S. 189, 198 (1971)). That is so even in private terminations and even where the parent is not entitled to representation at public expense.

**F. In private termination cases where an indigent parent is not represented at public expense, the costs and fees incurred for the preparation of the record and transcripts on appeal are to be paid out of the county district court fund.**

As amended by Senate Bill 1181, Idaho Code section 19-6009 limits when the SPD or the counties can be required to provide "indigent defense services."

25

> The office of the state public defender shall be required to provide indigent defense services only in cases listed in subsection (3) of this section, provided that such limitations shall not obligate a county to finance or oversee indigent defense service for any action not provided for in this chapter.

I.C. § 19-6009(4). If providing a record and transcripts necessary for appeal is an indigent defense service, Senate Bill 1181 also created a gap in the responsibility to provide records and transcripts for indigent parents appealing from judgments in private termination cases. But where an indigent parent is not represented at public expense, providing that parent with the record and transcripts necessary for appeal does not constitute an "indigent defense service" under Idaho Code section 19-6009(4). Though the phrase "indigent defense service" is not defined in the State Public Defender Act, *see* I.C. §§ 19-6001 to 19-6020, both plain meaning and its use in the context of that Act make it clear that "indigent defense services" are provided only in association with representation at public expense. As a result, providing records and transcripts necessary for appeal to indigent parents not represented at public expense does not constitute an "indigent defense service." For those parents, the counties, through the district court fund, are responsible for paying for the preparation of the record and transcripts necessary on appeal.

When a question before this Court requires statutory interpretation, we apply the following principles:

> The objective of statutory interpretation is to derive the intent of the legislative body that adopted the act. Statutory interpretation begins with the literal language of the statute. Provisions should not be read in isolation, but must be interpreted in the context of the entire document. The statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings. It should be noted that the Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant. When the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and the Court need not consider rules of statutory construction.

*State v. Schulz*, 151 Idaho 863, 866, 264 P.3d 970, 973 (2011) (citation omitted).

As a matter of ordinary language, the phrase "indigent defense services" denotes services provided for indigent defense. Idaho Code section 19-6008 suggests the same result. Subsection (1) of that section releases the counties from the "financial or legal obligation to provide indigent public defense," and transfers that responsibility to the State. I.C. § 19-6008(1). The term "indigent defense services" is then used in subsection (2) to explain in more detail the nature of that release and transfer. I.C. § 19-6008(2). It extends to "any other expense necessary for indigent defense services[.]" *Id.* Importantly, though, that "catch-all" provision is part of an explanation of the scope

of the release itself, which is from the obligation to provide indigent public defense. The statute directly connects indigent defense services to indigent public defense.

Indigent public defense assumes representation at public expense. A parent not receiving representation at public expense who is provided a record or transcript necessary for appeal has not received "indigent public defense" in any ordinary sense of the term "defense." Other statutes in the State Public Defender Act likewise connect indigent defense services to representation at public expense. Idaho Code section 19-6002(4) uses the phrase "indigent defense services" in the definition of another term, "indigent defense provider," connecting it directly with representation at public expense:

> [T]he state public defender or any agency, entity, organization, or person selected by the office for the direct provision of indigent defense services as a means to provide for the representation of indigent persons and other individuals who are entitled to be represented by an attorney at public expense.

I.C. § 19-6002(4). The definition indicates that "indigent defense services" are "a means to provide for the representation of indigent persons and other individuals who are entitled to be represented at public expense." Idaho Code section 19-6019(1) provides that the SPD may contract with "defending attorneys to provide primary or conflict indigent defense services," again suggesting that the services are associated with representation provided by attorneys. I.C. § 19-6019(1). Nothing in the State Public Defender Act suggests that a service provided to an indigent party who is not represented at public expense may nevertheless be an "indigent defense service."

This Court recently addressed whether providing transcripts necessary for appeal was an "indigent defense service" in *State v. Blazek*, Nos. 51842 & 52307, 2024 WL 4982927 (Idaho Dec. 5, 2024). The appellants in *Blazek* were defendants in criminal proceedings who were represented at public expense both at the trial court level and on appeal. Like in this case, the implementation of the legislation creating the Office of the State Public Defender brought uncertainty as to which entity was responsible for providing transcripts on appeal – the State Appellate Public Defender, the SPD, or the counties. Ultimately, the Court held that the responsibility to provide the record and transcripts necessary for appeals in criminal cases was a responsibility transferred to the SPD from the counties as an "expense necessary for indigent defense services." *Id.* at *6–8. This Court reached that result based in part on the premise that "*the right to representation* under the [State Public Defender] Act includes 'the necessary services and facilities of representation,' including 'in any appeal.'" *Id.* at *6 (emphasis added) (quoting I.C. § 19-6009(1)(b), (2)(b)). The Court also

27

relied centrally on *State v. Coronado*, 98 Idaho 421, 565 P.2d 1378 (1978), in which it held that a "statutory right of an indigent defendant to counsel included the right to a transcript at public expense." *Id*. at *6. The result this Court reached reflected its view that the transcripts were "necessary for such representation." *Id.* at *5.

As discussed above, though section 19-6009(4) prohibits the SPD or the counties from being "required" or "obligate[d]" to provide "indigent defense services" to indigent parents appealing a judgment terminating the parent-child relationship, it does not prevent them from voluntarily doing so. I.C. § 19-6009(4). If a state agency voluntarily provides representation to an indigent parent appealing a judgment terminating the parent-child relationship, that agency has also voluntarily assumed the responsibility for providing the record and transcripts necessary for the representation. For an indigent parent who is not represented at public expense on appeal, providing the record and transcripts necessary for appeal does not constitute providing an "indigent defense service" as that phrase is used in Idaho Code section 19-6009(4). That subsection does not, therefore, preclude requiring either the SPD or the counties to bear that expense. We hold that the counties are responsible for providing the records and transcripts necessary for appeal to indigent parents appealing judgments terminating the parent-child relationship who are not represented at public expense.

There are existing statutes and rules addressing the waiver of costs and fees for the preparation of the record and transcripts necessary for appeal, with county district court funds bearing those costs. On a finding of indigency, Idaho Code section 31-3220(5) permits a court to "direct that the expense of printing the record and/or transcript for use on appeal be paid out of the district court fund of the county in which the action was filed." I.C. § 31-3220(5). Idaho Appellate Rule 24(h) provides that fees associated with the preparation of transcripts, including the reporter's fee, "may be waived . . . pursuant to section 31-3220, Idaho Code." I.A.R. 24(h).

Importantly, though, section 31-3220 defines "indigent" to exclude anyone who is "a prisoner, as defined in section 31-3220A, Idaho Code[.]" I.C. § 31-3220(1)(d). Idaho Code section 31-3220A provides a mechanism by which a prisoner may establish an "inability to pay" court fees and proceed on partial or no payment. I.C. § 31-3220A(2). Section 31-3220A, however, only applies to civil actions *brought* by prisoners, not civil actions *defended* by prisoners. *See* I.C. § 31-3220A(2) ("A prisoner who seeks to file an action with partial payment of court fees required in sections 31-3201 and 31-3201A, Idaho Code, shall file the following at the time of filing of an

action . . . ."); *but see* I.C. § 31-3220(2) ("The court may authorize the commencement *or defense* of any action without prepayment of fees, costs or security, by any indigent person not a prisoner . . . ." (emphasis added)).

For indigent parents who are not incarcerated and are not represented at public expense, costs and fees for preparation of records and transcripts necessary for appeal should be waived under Idaho Code section 31-3220 and Idaho Appellate Rules 24(h) and 27(e). Generally, lower courts have discretion whether to grant these waivers. *See* I.C. § 31-3220(5) (providing that courts "may" grant waivers to indigent parties); *Johnson v. Jones*, 105 Idaho 602, 603–04, 671 P.2d 1065, 1066–67 (1983) (holding that this Court generally "assign[s] substantial weight to the trial court's discretion" in determining whether to waive transcript preparation costs). But *M.L.B.* eliminates that discretion in the context of appeals from orders terminating the parent-child relationship. *See* 519 U.S. at 128 (requiring states to provide a "record of sufficient completeness" to permit meaningful appeal for indigent parents appealing from orders terminating the parent-child relationship).

Finally, that same constitutional obligation exists for incarcerated parents despite the absence of a mechanism to waive transcript costs for incarcerated appellants. Nothing in *M.L.B.* suggests that its holding is inapplicable to indigent parents who are incarcerated. "[C]ourts have the inherent power and authority to incur and order paid all such expenses as are necessary for the holding of court and the administration of the duties of courts of justice." *Schmelzel v. Bd. of Comm'rs of Ada Cnty.*, 16 Idaho 32, 35, 100 P. 106, 107 (1909). Where an indigent parent is entitled to appeal from a judgment terminating the parent-child relationship, and that parent is constitutionally entitled to be provided a record and transcript to support that appeal at public expense, the transcript and record must be provided. Whether or not the parent is incarcerated, an indigent parent who is not represented at public expense on appeal from a judgment terminating the parent-child relationship should be provided transcripts at public expense, with the cost "paid out of the district court fund of the county in which the action was filed." I.C. § 31-3220(5).

## IV. CONCLUSION

For the reasons discussed above, when a petition for termination of the parent-child relationship is a private termination case filed "exclusively under chapter 20, title 16, Idaho Code," I.C. § 19-6009(3)(e), an indigent parent whose parental rights may be terminated may be entitled to appointed counsel at public expense. If an indigent parent is constitutionally entitled to

29

appointed counsel to oppose the petition, they are also entitled to appointed counsel on appeal from an order terminating the parent-child relationship. The SPD and the counties cannot be required to provide that representation, but they may voluntarily do so.

Whether or not an indigent parent is entitled to appointed counsel, they are constitutionally entitled to be provided a transcript and record necessary for appeal at public expense. If the SPD or a county volunteers to represent an indigent parent on appeal, the entity providing that representation should likewise provide the record and transcripts necessary for the appeal. If an indigent parent is not represented at public expense on appeal, costs and fees for preparation of the record and transcripts necessary for appeal should be waived, with the expenses paid out of the district court fund of the county in which the action is filed.

As to the consolidated matters directly at issue here, this Court will issue separate orders for temporary remands under Idaho Appellate Rule 13.3 for further proceedings consistent with this opinion.

Chief Justice BEVAN, and Justices MOELLER, ZAHN and MEYER CONCUR.